COUNTY OF ITASCA v. GEORGE A. RALPH AND OTHERS.[1]

January 16, 1920.

Nos. 21,547, 21,548.

**Drain — payment of preliminary expenses by county.**

1. The preliminary expenses in drainage proceedings may be paid by the county, without a hearing, where the county knows them to be just and true.

**Order establishing ditch may be vacated.**

2. The court has the power to vacate an order establishing a ditch upon seasonable application therefor, following Troska v. Brecht, 140 Minn. 233.

[1]Reported in 175 N. W. 899.

**Estoppel against party participating in subsequent proceeding.**
> 3. One who, after the order establishing a drainage project has been vacated, takes part in the subsequent proceeding therein to establish the project in a modified form, and appeals from the final order dismissing the proceeding, is concluded thereby from questioning the order vacating the order establishing the ditch.

**Admission of evidence.**
> 4. There could be no prejudicial error in the admission of certain evidence in this case.

**Interest — amount not reviewable on appeal.**
> 5. The amount of interest included in the verdict, not having been questioned in the court below, cannot be questioned on appeal.

After the former appeal reported in 139 Minn. 332, 166 N. W. 405, the cases were tried before Brill, J., who at the close of the testimony denied defendants' motions for directed verdicts and granted plaintiff's motion for directed verdicts in its favor. From an order in each case denying their motion for judgments notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*Duxbury & Duxbury* and *W. R. Duxbury,* for appellants.

*Ralph A. Stone* and *Thomas D. O'Brien,* for respondent.

HOLT, J.

The two actions are predicated upon two bonds given under these circumstances: In October, 1913, the four defendants in the first action petitioned for Judicial Ditch No. 2 in Itasca county, and presented a proper bond signed by them, two as principals and the other two as sureties. The bond was duly approved by the court, and such proceedings were had that on March 2, 1914, an order was made establishing the ditch. Mr. William A. Watts had appeared as attorney for the petitioners in the proceeding. Soon after the order was made, an action to enjoin the proceeding because of alleged irregularities therein was commenced by interested parties, and Mr. Watts began to entertain misgivings as to the validity of the order because of defects in the description of the ditch and the inclusion in the drainage territory of lands belonging to a different watershed. After some consultation with the judge who had made

the order, Mr. Watts presented an affidavit to the court, stating these matters fully, and asked for an order vacating the order of March 2, eliminating that part of the territory which was in a separate drainage district, requiring the engineer to modify the original plans accordingly and the viewers to reassess damages and benefits, and also providing for a final hearing upon due notice. An order was made as prayed on June 3, 1914. Prior thereto, and on June 1, 1914, the petitioners, except Larson whose lands had been eliminated from the proposed drainage district, had presented an additional bond for $1,500, executed by the three defendants in the second action, which was approved and filed by the clerk of the district court on that day. This bond was evidently given in response to a request of the court for additional security to cover the expenses to accrue from the anticipated vacation of the order of March 2, 1914, and the further work of the engineer and viewers required for the establishment of the desired modified drainage project. Thereafter hearings were had, resulting in an order refusing to establish the ditch and dismissing the proceeding. The petitioners appealed, but the order was affirmed in this court. In re Judicial Ditch No. 2, 139 Minn. 332, 166 N. W. 405. Thereupon these two actions, to recover from the signers of the bonds the expenses of the drainage proceeding paid by the county, were brought. The two actions were tried together, and when the evidence was in both parties moved for directed verdicts. The court directed verdicts in favor of plaintiff, and the defendants in each case appeal from the order denying their motion for judgment notwithstanding the verdicts or a new trial.

It stands admitted upon this record that the expenses paid by the county in the drainage proceeding exceed the amount of the two bonds. Appellants contend that, even though liability be conceded, no recovery can be had because there was no hearing of the claims upon notice to the county, citing State v. District Court of Thirteenth Judicial District, 138 Minn. 204, 164 N. W. 815. The case is not in point. It was there sought to hold the county to the payment of a claim to which it objected. Here the county recognized the expenses made as just and paid them. It could and did waive the notice of hearing on the claims so paid. Appellants do not suggest by pleading or proof that any expense paid by the county was unjust or invalid.

The main contention of appellants is that with the filing of the order of March 2, 1914, the court parted with jurisdiction in the proceeding, as the law then stood, and that the order vacating the order establishing the ditch and all proceedings thereafter were null and void for want of jurisdiction. Aside from the inherent power a court has to vacate orders or judgments improvidently granted, express authority is given by sections 7746 and 7786, G. S. 1913, which have been held applicable to an order establishing a drainage project in Troska v. Brecht, 140 Minn. 233, 167 N. W. 1042.

Furthermore, the appellants do not seem to be in a position to attack collaterally the disposition of the drainage project, instituted upon their petition and championed by them to a final determination in this court. It is said Mr. Watts had no authority from the petitioners to apply for a vacation of the order of March 2, 1914. We think that is immaterial now, for, instead of raising that point in the subsequent proceedings in the district court, they all joined in taking an appeal from the final order dismissing the drainage project, and Mr. Watts, admittedly, as their attorney, took and prosecuted the appeal. No attack was made in the appeal upon the order vacating the order establishing the ditch, nor was the procedure, up to the final order refusing to establish it, questioned. In addition, the record clearly shows that the appellant, Ralph, though at first of the opinion that they might safely rest on the order of March 2, finally consented that Mr. Watts should apply for its vacation. Ralph appears to have been the moving spirit in the enterprise and attended and took part in the subsequent hearings. The appellants, save Larson, executed the second bond in order to secure the privilege of amending the drainage applied for so as to eliminate certain lands, to secure more accuracy in the description of the ditch, and to be able to present further evidence. In view of all this, when sued on these bonds which in terms obligated the signers to "pay all the expense in case the court shall fail to establish said proposed ditch or any part thereof," the appellants ought not now to be heard to say that the order of March 2, 1914, still stands, although a later order dismissing the whole project has been affirmed by this court upon their appeal.

Since our conclusion is that the appeal taken by the defendants from the order dismissing the ditch proceeding so bound them that they can-

not now attack the final disposition of the matter in this collateral proceeding, no prejudicial error could result from the reception of evidence concerning the authority of Mr. Watts to appear for the appellants other than Ralph in the application to vacate the order of March 2, 1914.

Error is assigned on the amount of interest included in the verdicts. The attention of the court below was not invited to the matter either at the trial or in the motion for a new trial. It cannot be considered here.

The orders are affirmed.