## LEGAL NEWS PUBLISHING COMPANY v. THE IRON TRAIL COMPANY.[1]

June 15, 1923.

No. 23,124.

**Evidence did not require modified findings.**

1. The findings of fact challenged by the assignments of error have sufficient support in the record, and the evidence did not require the court to make any of the findings proposed by defendant as modification of, or substitution for, the findings made.

**Construction of contract correct.**

2. The trial court did not err in the construction or application of certain clauses in the contract involved in the action.

**Plaintiff could recover cost of repairing defect in machine sold.**

3. Under the terms of the contract plaintiff could replace or repair a defect in the machine sold by it to defendant on instalment payments, if such defect endangered the machine and defendant failed to remedy the defect when notified to so do, and recover the reasonable cost of such replacement or repair.

**Question of compound interest not presented.**

4. If compound interest is included in the judgment, the record does not disclose the amount, nor does it show that any application has been made to the trial court to eliminate the same, hence no redress is available on the appeal.

Action in the district court for Hennepin county to recover $2,638.25 upon a contract. Defendant interposed a counterclaim for work and labor amounting to $1,246.06 under the same contract. The court appointed three referees to try the case, as mentioned in

[1]Reported in 194 N. W. 109.

the opinion, who heard the testimony, made findings and filed their amended report. The court, Dickinson, J., heard arguments, made findings and ordered judgment in favor of plaintiff for $2,482.72. Defendant's motion for amended findings was denied and its motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*Lawrence R. Allison* and *Carl A. Youngquist*, for appellant.

*Jamison, Stinchfield & Mackall,* for respondent.

HOLT, J.

Both parties are corporations. For years plaintiff has published a newspaper called Finance and Commerce, devoted to financial news and legal notices. It is published daily, except Sundays, and circulated in Minneapolis and St. Paul. Plaintiff also owned a printing outfit, which on July 5, 1913, it sold to defendant. The sale was evidenced by a written contract under which an inventory was to be taken and the price determined by appraisers. A small part was to be paid when the price was ascertained, and thereafter weekly instalments with interest. The agreement also provided that defendant should print and publish plaintiff's newspaper at thirty dollars an issue, payable weekly. The size of the paper was 4 pages of 6 columns each. Defendant, if requested by plaintiff, agreed to prepare, print and insert in any issue two additional pages at the rate of "twenty-five cents (25c) per thousand ems for any extra composition going into said extra copies or inserts, and one ($1.00) dollar per hour for extra time required in making ready, locking up the forms, or printing or folding such extra copies or inserts on the machine." The clause just quoted seems to have been the chief cause of this lawsuit. The inventory was made and possession taken, but the appraisal was not finished until the following spring. The price thereby fixed was $11,317.16. Payments for the publication of the paper were generally made by crediting the amount thereof upon the purchase price of the plant.

After continuing the publication for some time and having had disputes concerning the payment for the inserts, the parties agreed to increase the size of the paper to 7 columns a page and thus

avoid the necessity of the inserts. They disagree as to whether any extra compensation should be paid for the added space. After the paper had been issued in this form for awhile, 2 inches were added to its length for a short time. This caused further disputes, and, on the advice of its counsel, plaintiff requested a return to the size specified in the contract and added inserts when its business required. However, in 1915 the situation became so acute that the printing and publication of the paper by defendant ceased. Plaintiff sued for the balance of the purchase price on the plant, and defendant counterclaimed for the printing done under the contract. In addition to what constituted extra composition for which defendant should be paid there were disputed items of interest, insurance premiums, extra printing and repairs to the plant made by plaintiff. On the advice of experienced attorneys, who recognized that the ordinary trial to a court or jury would be unsatisfactory on account of the technical character of the work and the many items in dispute, the parties stipulated for a trial to three referees; one of plaintiff's choosing; one of defendant's, and the third selected by the two so chosen. The referees selected may be called experts. One was an able attorney and accountant. The other two were practical and experienced printers and publishers. The case was tried, and the referees made report of their findings and conclusions. The stipulation of the parties provided for a hearing before the district court. The hearing was had, and a slight modification in favor of defendant in the referees' conclusions was made by the district court in its findings. Defendant's motion for a new trial was denied, and judgment entered in plaintiff's favor for $3,512.84, from which defendant appeals.

Of the many items in dispute the findings fixing the amount thereof are assailed either directly by an assignment of error that the evidence does not sustain them, or by an assignment that the court erred in not modifying, eliminating or amending them by substituting findings proposed by defendant. It would serve no good purpose to refer to these many and various items. We are content with saying that the record has been carefully read and examined and we are not convinced that any one of the amounts

found in favor of either party is wrong, or that the evidence required the court to make any of the findings proposed by defendant. The findings thus attacked relate to pure matters of fact, to bookkeeping and to oral agreements. The unanimous conclusions of the three able and competent men who heard the evidence, examined the accounts of the respective parties, and measured the contents of the Finance and Commerce as it was printed and made up, no doubt settled the matters as near right as it is possible to adjust controversies in a court of justice.

The only legal question we discover in the record is whether defendant may justly complain of the construction the learned trial court placed upon the clause first above quoted from the contract. To one not in the printing business, and, perhaps, even to one engaged therein, the provision for specified compensation "for any extra composition" may sound ambiguous. The parties hereto found it so. But, although their views diverged at first, and one or two inserts were credited defendant at a higher figure than plaintiff deemed proper, it seems to us the parties, during the period before the additional column was added to the page, gave a practical construction to the meaning of the contract in harmony with that of the court. The character of the paper also sustains the court. A large part thereof always was made up of legal notices such as mortgage foreclosures and probate hearings. These must be published on a certain day each week for several consecutive weeks, but need not appear upon any other day during such time. The space required for the publication of the legal notices varied greatly from day to day. A notice once set up was retained in the form or galley until published the requisite number of times, but was not published except on the days required unless needed as a "filler." That is, the paper was not issued with blank spaces. If such there were, after the insertion of the matter required to be published on a certain day, then legal notices kept set up or in form for some subsequent publication would be "lifted" and inserted to fill all blank spaces. Thus a legal notice to be published every Monday for 6 weeks could be used as a "filler," or not used at all, as suited the publisher's convenience, on any other day during the 6 weeks.

Such a notice was "dead matter" except as to the Monday issue, when it was termed "live matter" during the time it must be published. In that situation, the court construed "extra composition" as used in the contract, to mean " 'live' matter when run and printed as such and not when used as mere filler. For example, a legal notice, that is required to be run for 6 successive weeks, is 'live' matter, and, therefore, 'extra composition' on the particular day of each week · when its publication is required, and is mere 'filler' or 'dead' matter and therefore not 'extra composition' on all other days. On such other days, it simply stands in the galleys, or, if used at all, only to fill space, and of no value or necessity as printed matter to the party furnishing it. On such intervening days, it is as wholly 'dead' matter as if it had run its full course of 6 successive weeks and was ready for the melting pot as simple lead." We think the interpretation right.

We are also of the opinion that no error was made when the court, in computing the extra compensation to be awarded defendant when publishing the paper in enlarged form, held that, in determining the amount of "live" matter in the theoretical seventh column, there should be deducted from the "live" matter of the paper proper in any single issue, such an amount of "live" matter as would constitute a full 6-column paper; the balance thereof to be construed "live" matter in the seventh column, for which payment should be received at the agreed price. Nor was it wrong to hold that plaintiff was not to be penalized for the orderly and proper arrangement of the paper, but that it could charge against the "live" matter in the insert, all the "dead" matter in the paper proper.

It is contended that it was error to allow plaintiff credit for the value of replacing a cracked mold in defendant's plant. Defendant in the contract undertook to maintain the plant in good condition and repair, and plaintiff retained the privilege of stopping any unnecessary waste, or any careless handling of the plant or of any of its parts. There was evidence that it was dangerous both to workmen and the outfit to operate a machine with a cracked mold; that there was such a mold which defendant neglected to replace when

notified so to do, and that when finally plaintiff did remove and replace it, defendant, by its president and manager, was present and offered no objection. We think the finding as to this item must be sustained.

It is also claimed that the judgment includes interest upon interest. This question does not appear to have been presented to the court below. And the record furnished no data from which it can be definitely ascertained whether it is so or not, or in what amount the judgment is enlarged by reason of the compounding of interest, if any there be. In that situation the remedy, if any, must be sought in the court below.

The judgment is affirmed.