# HARRY H. ANDREWS v. GRACE G. ANDREWS AND ANOTHER.[1]

## No. 25,541.

## February 11, 1927.

**Agreement not usurious.**

1. Respondent advanced money to his brother to enable him to purchase certain property. It was agreed that, in lieu of interest, respondent should receive a share of the net annual earnings of the property. The fact that his share proved to be more than interest computed at the maximum rate allowed by law did not taint the transaction with usury.

**Whether action was barred by statute.**

2. The language of the instruments executed when the money was advanced should be read in the light of the circumstances and warranted the trial court in holding as a matter of law that repayment was not to be made without an actual demand therefor, that a demand was not contemplated until some indefinite time in the future, and that the statute of limitations did not bar a recovery unless the jury found that a demand had not been made within a reasonable time.

**Reasonable time within which to demand payment.**

3. Ordinarily a reasonable time within which to make a demand for the payment of a debt is the period allowed by the statute of limitations for bringing an action to recover the debt, but the rule is not inflexible and will not be applied where it appears that the parties contemplated an indefinite delay in the making of the demand.

**Profits from date of loan recoverable.**

4. Respondent's share in the profits was to be paid annually. Following Cushman v. Board of Co. Commrs. 19 Minn. 252 (295), it is *held* that respondent may recover his share from the date of the loan.

**Burden of proof on party asserting limitation of action.**

5. The statute of limitations is an affirmative defense which imposes the burden upon the one asserting it to prove every element necessary to establish it.

[1]Reported in 212 N. W. 408, 213 N. W. 899.

**Prima facie evidence that dividends have been earned.**

6. The declaration and payment of dividends on its stock is prima facie evidence that a corporation has realized profits equal in amount to the dividends.

**Share in earnings fixed by amount actually invested.**

7. Construing the contract under which the money was advanced, it is *held* that the amount actually invested in the property determined respondent's share in the earnings; that the fact that the property was transferred to a corporation in exchange for its stock in an amount greater than the actual investment did not cut down respondent's share in the earnings; and that the fact that the corporation declared and paid stock dividends and accumulated net earnings does not compel the conclusion that the original investment in the property had been increased.

**Trial court's method of ascertaining increase correct.**

8. There was no error in the trial court's method of ascertaining the amount by which the original investment had been increased.

**Interest due from presentation of claim to verdict in district court.**

9. Respondent had a right to interest at the legal rate upon his total claim from the date when the claim was presented to the probate court to the date of the verdict.

## AFTER REARGUMENT.

### May 6, 1927.

**Failure to take exception prevents review of charge respecting interest.**

10. An instruction relative to interest to be allowed, in case the jury found in claimant's favor, cannot be questioned on appeal from an order denying a new trial when no exception was taken at the time of the trial and the notice of motion for a new trial failed to take exception to the instruction, merely stating that the verdict was not justified by the evidence and was contrary to law.

Appeal and Error, 3 C. J. p. 919 n. 34; p. 944 n. 37; p. 989 n. 48.
Contracts, 13 C. J. p. 542 n. 30; p. 543 n. 32; p. 584 n. 3.
Evidence, 22 C. J. p. 108 n. 77.
Executors and Administrators, 24 C. J. p. 445 n. 34.
Limitation of Actions, 37 C. J. p. 854 n. 80, 83; p. 961 n. 4; p. 964 n. 46; p. 965 n. 50; p. 967 n. 64; p. 1243 n. 59.

Usury, 39 Cyc. p. 918 n. 56; p. 943 n. 62; p. 944 n. 63, 64; p. 947 n. 81; p. 952 n. 4.

———

See note in 32 L. R. A. (N. S.) 486; 44 A. L. R. 397; 17 R. C. L. 758; 5 R. C. L. Supp. 957.

Defendants in the district court, appellants here, appealed from an order of the district court for Hennepin county, Waite, J., denying their motion for judgment notwithstanding the verdict or a new trial. Affirmed.

*Ueland & Ueland,* for appellants.

*Claude Krause, J. B. Faegre,* and *Cobb, Wheelwright, Hoke & Benson,* for respondent.

LEES, C.

James C. Andrews died intestate at Minneapolis February 8, 1924. His brother Harry H. Andrews filed a claim for $93,082.87 against his estate, based on two instruments reading as follows:

### Exhibit A

"$8750.                                    Minneapolis, Minn. Feb. 1, 1905.

"As per agreement after date I promise to pay to the order of H. H. Andrews, Eighty-seven Hundred Fifty Dollars at Minneapolis, Minn.                                    Value received.

"Jas. C. Andrews."

### Exhibit B

"Feb. 1, 1905.

"Jas. C. Andrews & H. H. Andrews.

"Agreement secured by note of Jas. C. Andrews to H. H. Andrews, in the sum of Eight Thousand Seven Hundred Fifty Dollars ($8,750) viz:

"For consideration of said amount of $8,750.00, receipt of which is hereby acknowledged, being a portion of the amount paid by Jas. C. Andrews toward the purchase of the Brunswick Hotel property, corner Hennepin Ave. and Fourth St. So. in Minneapolis, Minn., it is

hereby agreed by said Jas. C. Andrews to pay annually to H. H. Andrews in lieu of interest money such pro rata share of the net annual earnings or profits of said Brunswick Hotel property as shall be represented by the investment of the sum of $8,750.00 compared to the total investment according to the books of the company operating said property composed of said Jas. C. Andrews also E. L. McGrory and E. S. Coffin. This agreement to be in force till said note of $8,750.00 is paid in full, excepting that the proportion of said earnings or profits to be paid in lieu of interest shall decrease in the same relative ratio as payments on the principal sum of $8,750.00 shall be made from time to time.

"Jas. C. Andrews,

"Party of the First Part.

"H. H. Andrews,

"Party of the Second Part."

The claim was disallowed by the probate court and an appeal taken to the district court, where pleadings were made up pursuant to G. S. 1923, § 8989.

Among other things the answer alleged that Exhibits A and B called for an usurious rate of interest, and that any cause of action which the claimant might have accrued more than six years before the death of James C. Andrews.

The district court held, as a matter of law, that the loan was not usurious and that Exhibits A and B showed that the parties intended that the money should not be repaid before payment was actually demanded at some indefinite time in the future, that it was claimant's duty to demand payment within a reasonable time, and instructed the jury to return a verdict in his favor for $42,044.09, if it was found that a reasonable time within which to demand payment had not expired more than six years prior to February 8, 1924. A verdict in that amount was returned, and this appeal was taken from an order denying appellants' motion in the alternative for judgment or a new trial.

Exhibits A and B were prepared by James, then a clerk employed by the Pillsbury Washburn Flour Mills Company. Harry was en-

gaged in business for himself as an exporter of flour. The relations of the brothers were cordial and intimate. In the year 1905 the Brunswick Hotel property in Minneapolis was purchased by James C. Andrews, E. L. McGrory, a real estate dealer, and Edgar S. Coffin, a manufacturer of boxes. None of them had any previous experience in the hotel business. Mr. Coffin was the only one of them who was available as a witness at the trial. He testified that the property was purchased for $40,000; that Andrews put in $20,000; the witness, $10,000; and McGrory $10,000 in services. In May, 1905, the purchasers organized a corporation known as the Brunswick Hotel Company and transferred the property to the corporation; 502 shares of stock were issued to Andrews; 249 to Coffin; and 249 to McGrory. Each share was of the par value of $100. Of the $20,000 furnished by James, $12,300 was borrowed from Harry. As evidence of the loan, he gave him Exhibits A and B and three demand notes for $1,000, $1,350 and $1,200, respectively. At the time of James' death, Harry had received nothing in return for the money loaned, but at intervals of approximately six years James had replaced the demand notes with new notes for the principal and accrued interest.

It is a fair inference that James' venture was highly speculative. The hotel building was not of modern construction, the purchasers were not practical hotel men, and James was under the necessity of borrowing the major portion of the money he invested.

In December, 1910, the hotel was destroyed by fire, together with most of the corporate books and records. Following the fire, The Andrews, a new and modern hotel, was erected, without any additional investment by the stockholders of the Brunswick company. The insurance on the old building and a mortgage loan of $150,000 seem to have provided funds sufficient to pay for the new building. The new hotel was operated until the summer of 1911 by the Brunswick company. James and the other stockholders then organized a corporation known as the Andrews Hotel Company, which took a lease of the property and operated the hotel until March, 1920, when the Brunswick company purchased the stock of the Andrews company and took over the management of the hotel.

The trial court found that, in the purchase from the Andrews company, the Brunswick company expended $133,931.25, and that this amount, plus the original investment of $40,000, represented the total investment of the Brunswick company in the hotel property, and held as a matter of law that 8750.00/173931.25 of the net annual earnings of the Brunswick company after the year 1920 and 8750/40000 prior thereto represented the amount which claimant was entitled to recover if the jury found that payment had been demanded within a reasonable time. In the aggregate these earnings amounted to $297,374.05 and claimant's pro rata share thereof, ascertained as aforesaid, plus interest thereon after February 8, 1924, to the date of the verdict, was the amount awarded. In January, 1917, Harry wrote James, saying:

"The $8750 agreement, I wish you could arrange so we could get some income on it; you see we have never received any cash as interest or income on any of this money or the other notes for 12 years, and while you renew the other notes or of course pay them if you wish, don't you think you ought to and feel that you can arrange in some way so we can have some of the Hotel regular income while it is paying so well?"

In February, 1921, he wrote again asking for a renewal of the demand notes. He received a reply inclosing the new notes for which he had asked. In his letter James said:

"I had also thought that perhaps we might come to some sort of deal on the east side property and apply whatever value we could agree on to the reduction of that other note. You see we have not been drawing any dividends from the Brunswick Investment Co. as when [we] built the new building had to borrow so much that neither Mr. Coffin nor I thot we ought to and so left all its earnings to accumulate and pay off the debts."

It appears that the last statement was not true, for between June 1, 1905, and February 1, 1921, $54,368 in cash dividends had been paid.

After James' death the books of the Brunswick and the Andrews companies were audited. The claim in litigation is based on the facts disclosed by the audit.

The trial court held that the claimant had no right to share in the earnings of the Andrews company, and that his share of the earnings of the Brunswick company, plus interest from February 8, 1924, to the date of the verdict, amounted to $42,044.09.

As to the defense of usury, it is an established rule that, if a contract for the loan of money is valid when made, it does not become void for usury, although it subsequently develops that the lender will receive a greater return for the use of his money than the highest rate of interest which may be exacted lawfully. Rugland v. Thompson, 55 Minn. 466, 57 N. W. 205; Smith v. Parsons, 55 Minn. 520, 526, 57 N. W. 311. It is also a rule of general application that, when the payment of full legal interest is subject to a contingency which puts the lender's lawful profit in hazard, the interest so contingently payable need not be limited to the legal rate, provided the parties contract in good faith and without intention to avoid the usury statute. See 39 Cyc. 952, and cases cited, and Bowman v. Kohlhase, supra, page 8.

The rule was applied in Temple v. Davis, 115 Minn. 328, 132 N. W. 257, the court saying that it did not appear from the contract with any degree of certainty that performance thereof would result in securing to the lender a greater rate of interest than is lawful. So here, where there was no certainty that the Brunswick Hotel property would produce profits, it cannot be said that it appears that the parties intended to evade the usury laws, or that it was claimant's purpose to exact a greater return for the loan than the law allows.

We conclude that the court correctly ruled that the defense of usury was not available. This conclusion finds some support in G. S. 1923, § 7041.

As to the statute of limitations, it is argued that, since Exhibit A is in the form of a promissory note and does not specify the time of payment, in law it became payable immediately. Horn v. Hansen,

56 Minn. 43, 57 N. W. 315, 22 L. R. A. 617. Branch v. Dawson, 33 Minn. 399, 23 N. W. 552; Ganser v. Fireman's Fund Ins. Co. 34 Minn. 372, 25 N. W. 943; Mitchell v. Easton, 37 Minn. 335, 33 N. W. 910, and other cases of the same import, are also cited on this point. These cases hold in substance that, when a contract to pay money is complete, an action to recover the money may be commenced at once in the absence of an agreement that a previous demand shall be made.

On the other hand it is argued that Exhibits A and B must be read together, that they cannot be placed in the same category as obligations upon which suit may be brought without first making a demand for payment, and that, when they are viewed in the light of the circumstances under which they were executed, it appears that it was the intention of the parties that an actual demand for payment should be made before a right of action could arise. In support of this contention, Brown v. Brown, 28 Minn. 501, 11 N. W. 64; Horton v. Seymour, 82 Minn. 535, 85 N. W. 551; Portner v. Wilfahrt, 85 Minn. 73, 88 N. W. 418; and Fallon v. Fallon, 110 Minn. 213, 124 N. W. 994, 32 L. R. A. (N. S.) 486, 136 Am. St. 464, are cited.

In the Brown case the complaint alleged a loan of money to become due and payable whenever the lender should demand the same and not before such time.

In the Horton case the assignee of an insolvent partnership made a sale of the firm's assets to five of the firm's creditors whose claims aggregated approximately 70 per cent of the entire indebtedness of the firm. The assignee agreed to leave the remaining 30 per cent of the purchase price on deposit with the purchasers, to be paid when and as he was required to disburse it.

In the Portner case a husband and wife conveyed their farm to their son in 1885, taking back a bond providing for the payment of a specific sum of money. Demand for the payment thereof was not made until 1900. The bond provided that the son would pay the money on demand.

In the Fallon case a woman delivered her earnings to her brother from time to time between the years 1870 and 1884. He died in

1907. She filed a claim against his estate. She had not previously demanded the repayment of the money.

In each of these cases it was held that the statute of limitations was not a bar although no proceeding to enforce the claim was begun within six years after the money was received by the debtor. In the Fallon case the court said that where, by the contract of the parties, express or implied, the money or debt which is the subject matter thereof is payable only upon a demand in fact, the statute does not begin to run until an actual demand is made. The demand must be made within a reasonable time, which is ordinarily the period of the statute of limitations, but, where the parties contemplated a delay in making the demand to some indefinite time in the future, the statutory period for bringing the action is not controlling on the question of reasonable time.

In none of these cases was there a written promise to pay money. We think nevertheless that the rule they announce is applicable in the case at bar. Reading Exhibits A and B in the light of the circumstances disclosed by the evidence, it fairly appears that James and Harry mutually intended that there should be an actual demand for the repayment of the loan before a cause of action would accrue. The relationship of the parties, the loan of the money for a specific purpose, the fact that Harry was not to receive interest but a share in the annual profits in lieu thereof, the fact that there was no certainty that there would be any immediate profits, and the fact that Exhibit B provides for the payment of a share in the net earnings or profits of the property for an indefinite time in the future, all point to the conclusion that it was not intended that the loan should be repaid until an actual demand for payment had been made and that such demand was not to be made within a definite time. It is true that James had the right to pay the whole or any part of the loan whenever he saw fit to do so, and that there was nothing in the contract to prevent Harry from demanding payment at any time. But the conduct of both subsequent to 1905 indicates pretty clearly that they intended from the beginning that James should not be called upon to return the money before the venture

had become so profitable that he could pay without financial embarrassment. He could have paid long before he died, but Harry did not know that. James concealed the true state of affairs and led his brother to think that there had been no returns on the investment, thus putting off the day when a demand for payment might be expected. Harry seems to have had the utmost confidence in his brother and no desire to embarrass him by calling for his money before it could be paid out of the profits realized from the property. Whether the delay in the demand for payment was unreasonable was a question of fact, and appellants cannot complain because it was submitted to the jury and resolved in claimant's favor.

In addition to the decisions of this court cited in support of the conclusion we have reached, see Massie v. Byrd, 87 Ala. 672, 6 So. 145; Baxter v. Beckwith, 25 Colo. App. 322, 137 Pac. 901; Jameson v. Jameson, 72 Mo. 640; Stanton v. Stanton, 37 Vt. 411; and Shapleigh Hardware Co. v. Spiro, 141 Miss. 38, 106 So. 209, 44 A. L. R. 393. The gist of these cases is that, if the parties intended that there should be delay in making a demand, the statute of limitations does not begin to run until an actual demand is made, even though a promissory note is given for the money received.

It is contended that in no event can there be a recovery of profits earned more than six years prior to the date of James' death. By the terms of Exhibit B, Harry was to receive his share annually. It is urged that he had a right to demand and sue for the same at the end of each fiscal year, and we are cited to cases holding that where an interest coupon, attached to a bond or note, is not paid when due, a cause of action then accrues and a suit may be brought to enforce it. See Amy v. Dubuque, 98 U. S. 470, 25 L. ed. 228; Edwards v. Bates County, 163 U. S. 269, 16 Sup. Ct. 967, 41 L. ed. 155.

Cushman v. Board of Co. Commrs. 19 Minn. 252 (295), a case which has never been overruled or criticized so far as we have been able to discover, is controlling on this point. The case involved interest coupons attached to county bonds. The court said that the coupons were not independent instruments but were given for in-

terest to become due upon the bonds; that the interest was a parcel of the bonds themselves and was incident to the principal debt; that although a creditor may recover interest as it falls due, yet if he forbear to bring an action, the interest remains an incident to the debt and may be recovered with it when the principal falls due. See also McCutchen v. Town of Freedom, 15 Minn. 169 (217); J. D. Moran Mfg. & Const. Co. v. City of St. Paul, 65 Minn. 300, 304, 67 N. W. 1000; Ferry v. Ferry, 2 Cush. 92.

In an extended note to In re Diven, 36 A. L. R. p. 1085, it is said that where a contract provides for the payment of interest periodically so that instalments thereof fall due before the maturity of the principal debt, there is a conflict of authority as to when the statute of limitations begins to run against an instalment. The weight of authority is that it does not begin to run until the principal debt is due and payable; but, where the interest payments are evidenced by coupons, each consisting of a promise to pay a specific sum on a stated date, the courts hold that the statute of limitations begins to run against each coupon at the date on which it is payable.

No interest coupons are involved in the present case and, even if there had been, the Cushman case would seem to be decisive.

It is next urged that the court erred in instructing the jury that appellants had the burden of showing that a demand was not made within a reasonable time. The instruction was correct, the rule being that the statute of limitations is an affirmative defense which imposes the burden upon the one asserting it of proving every element necessary to establish it. Matteson v. Blaisdell, 148 Minn. 352, 182 N. W. 442.

Owing to the fire of 1910 there were no books to show the net earnings of the Brunswick company for the years 1906 and 1907. Plaintiff was permitted to show that in each of those years a cash dividend of $6,000 was paid to the stockholders. It is argued that this does not prove that profits were realized in either year and that the court erred in ruling to the contrary.

Section 7470, G. S. 1923, authorizes the directors of a corporation to declare dividends of the profits of the business of the corporation; and § 7489 provides that the declaration of a dividend when the

profits are insufficient to pay it, or when the funds remaining will not meet the corporate liabilities, is a felony. In view of these provisions, payment of the dividends was prima facie evidence of profits sufficient to pay them. It is not to be inferred that the directors violated the statute. The presumption is the other way. The trial court rightly held that, in the absence of any proof to the contrary, this circumstance compelled the inference that not less than $6,000 was earned over and above expenses in each of the years mentioned.

By several assignments of error appellants raise the point that the court was in error in instructing the jury to return a verdict for $42,044.09, if it was found that payment had been demanded within a reasonable time. In construing Exhibit B, the court held that the words "net annual earnings or profits" meant the net income derived from the investment in the Brunswick Hotel property in each fiscal year during the life of the agreement; that the words "company operating said property" meant primarily the three individuals named in Exhibit B, and secondarily the corporation they organized in May, 1905; that the words "according to the books" meant the account books of the corporation, kept according to correct methods of business accounting; that the net annual earnings were to be ascertained from them; that the words "the total investment" meant the actual contributions made to purchase the hotel property, furniture, fixtures and good will; that, if the original investment of $40,000 was increased by additional contributions, claimant's share in the profits would be reduced thereafter and should be measured by taking as the numerator of a fraction 8,750 and as the denominator 40,000, plus the amount of the additional contributions, found to be $133,931.25 added to the original investment when the stock of the Andrews Hotel Company was purchased.

The evidence showed that James was a large stockholder in the last named corporation, which held a lease of the Andrews Hotel. The lease was highly profitable. Mrs. Edith Zonne was another large stockholder. She owned 500 shares. James and Mr. Coffin purchased her stock for $390 a share and transferred it to the Brunswick company, taking in exchange stock of the par value of $195,000.

At the time of these transactions, the value of the assets of the Andrews Hotel Company, over and above its liabilities, was $133,931.25. Appellants complain (1) on the ground that the denominator of the fraction should have been much larger; and (2) because interest was allowed after the date of James' death on Harry's share of the profits.

The books of the Brunswick company show that it issued $100,000 par value of its capital stock to the three persons named in Exhibit B when they transferred the property to the company. It is therefore argued that the original investment was $100,000 instead of $40,000. It has been held that there is no presumption that when issued the stock of a corporation is worth par, Virginia v. West Virginia, 238 U. S. 202, 219, 35 Sup. Ct. 795, 59 L. ed. 1272, but, even if there were, that is not the test by which to determine the amount actually invested. If it were to be held that the amount invested was conclusively established by the stock books of the Brunswick company, it would follow that claimant's share in the profits would depend wholly on the amount of stock issued and might be greater or less than the parties intended when they executed Exhibit B. Manifestly the actual amount of the original investment was what they had in mind. If the amount shown by the books of the corporation were to control, it would have been within James' power to place a fictitious value on the property and reduce Harry's share in the profits as he saw fit.

We have considered the contention that the denominator of the fraction should have been increased by adding the amount of stock dividends declared by the Brunswick company prior to James' death. The argument is that such dividends were the legal equivalent of a distribution of cash to stockholders and a reinvestment by them in the corporation or its property. This contention is disposed of by Eisner v. Macomber, 252 U. S. 189, 40 Sup. Ct. 189, 64 L. ed. 521, 9 A. L. R. 1570, holding that a stock dividend takes nothing of value from the assets of a corporation and adds nothing to the property of a stockholder, and is not to be confused with one paid in cash with a real option to the stockholder to keep the money as

his own or reinvest it in new shares. The reasoning of the court in that case also disposes of the contention that the accumulated net earnings of the Brunswick company against which stock dividends were not issued should be treated as an additional investment in the property.

We think the net assets of the Andrews Hotel Company, and not the amount paid to Mrs. Zonne for her stock, is all that can be considered as an addition to the original investment in the property of the Brunswick Hotel Company. The value of the lease to the Andrews company undoubtedly had something to do with fixing the price paid for Mrs. Zonne's stock but, in getting rid of the lease, we fail to see how anything was added to the investment in the property of the Brunswick company.

The death of James placed Harry on the same footing as any creditor having a matured claim. Such a creditor has a right to interest from the date when the claim matures to the date of the entry of judgment.

The rule is that interest is allowed by way of damages on money due on contract from the commencement of the action to the time of trial. Ormond v. Sage, 69 Minn. 523, 72 N. W. 810; Larson v. Anderson, 122 Minn. 39, 141 N. W. 847. A claim against James' estate was duly filed in the probate court, but the date of filing is not disclosed by the record. However we are informed in the briefs that the claim was promptly asserted in the probate proceedings. In the absence of a showing to the contrary, we must assume that interest was correctly computed by the court in accordance with the rule above stated. Such an allowance is not an infringement upon the statute against compounding interest.

The foregoing covers all of the assignments of error which we think it necessary to discuss. Those not specifically mentioned have been considered with the others. We find no error upon which appellants may obtain a reversal.

Order affirmed.

AFTER REARGUMENT.

On May 6, 1927, the following opinion was filed:

LEES, C.

A reargument of the point referred to in the ninth paragraph of the syllabus was granted and briefs have been submitted covering the point more fully than the original briefs.

In their original brief, counsel for respondent said that the right to interest from the date of James' death to the date of the verdict had been conceded. Counsel for appellants denied this, and the briefs on the reargument go into the matter at considerable length.

It now appears that, before the charge to the jury was delivered, a statement prepared by an accountant was presented to the court by respondent's counsel. The statement shows that respondent's share of the earnings of the Brunswick company to February 8, 1924, amounted to $28,856.56. To this was added the amount of the original loan and interest on the total from the date mentioned to the date of the trial. Thus computed, the interest included in the verdict amounted to $4,437.53. On this basis the court directed the jury to return a verdict of $42,044.09, if the verdict went against the appellants, saying:

"The sum is arrived at by necessary computation and from the conclusions of the court, and as the case now goes to you it is conceded that if the court is right, if Harry Andrews is entitled to anything, he is entitled to that sum which includes all the interest that he is entitled to in this case down to the present time."

No exception to this was taken, although specific exceptions to other portions of the instructions were duly noted.

The notice of motion for a new trial was based on several grounds. One was that the verdict was not justified by the evidence and was contrary to law. It was on this ground only that appellants questioned the amount of interest included in the verdict, and it is the ground upon which the assignment of error now under consideration is founded.

If the court was wrong in assuming that appellants conceded that respondent was entitled to $4,437.53 as interest, attention should have been called to the misunderstanding or an exception taken at the close of the charge, or specific mention of the error should have been made in the notice of motion for a new trial. Appellants took none of these steps. For this, if for no other reason, they are foreclosed from now attacking the verdict on the ground that too much interest was allowed the respondent.

There is an additional reason for the conclusion. In County of Itasca v. Ralph, 144 Minn. 446, 175 N. W. 899, it was held that when the amount of interest included in the verdict is not questioned in the court below, it cannot be questioned on appeal; and in Legal News Pub. Co. v. Iron Trail Co. 156 Minn. 90, 194 N. W. 109, that, if compound interest was included in the judgment, unless the record shows that an application was made to the trial court for the elimination thereof, on appeal to this court appellant cannot complain about the amount of the judgment.

As in the case at bar, the record in each of these cases shows that there was a motion for a new trial, based on the ground that the verdict or decision was not justified by the evidence and was contrary to law.

The statement in the opinion, that in allowing interest there was no infringement upon the statute against compounding interest, was unnecessary. There was no intention to depart from the rule that the death of a debtor does not give to his creditor the right to interest on interest which accrued prior to the date of the probate court's ruling on the claim.

With this explanation and for the foregoing reasons, we adhere to our former ruling.