LUCY GOLDEN v. LERCH BROS. INC. AND OTHERS.[1]

AFTER REARGUMENT.[2]

July 8, 1938.

No. 30,987.

[1]Reported in 281 N. W. 249.
[2]Former opinion officially filed February 19, 1937, but not published, is withdrawn, and the following opinion substituted in its place.

*Naughtin & Henley* and *Brill & Maslon,* for appellant.

*Thomas H. Strizich, I. K. Lewis,* and *Lewis, Grannis & Underhill,* for respondents.

JULIUS J. OLSON, JUSTICE.

This case comes to the writer upon reassignment after this court had granted defendants' petition for reargument. Such has now been had. Counsel have provided much additional material to that originally furnished when the matter was first submitted.

This action was brought by James F. Golden against defendants, his employers, to recover damages for injuries caused by alleged breach of duty on their part in failing to comply with the requirements imposed by 1 Mason Minn. St. 1927, § 4174. He recovered a verdict of $22,500. After its rendition Mr. Golden died, and his administratrix has been substituted as plaintiff. Later defendant George Lerch died, and the representative of his estate has been substituted as a defendant. We shall, however, as a matter of convenience, refer to the parties as they were when the case was tried.

The relief sought and the basis therefor may be thus summarized: From June, 1917, until August 8, 1929, plaintiff was employed by the copartnership defendants to render service as a chemist in their iron ore-testing chemical laboratories. In performing the duties of his employment he was required in his professional capacity to

make analyses of iron ore and other substances mixed therewith as the same were presented for analysis in connection with said defendants' business. From August, 1929, and until January 31, 1930, plaintiff continued to render similar service for the corporate defendant which had been formed to take over the business and affairs of the former partnership.

Because of the nature of plaintiff's work and by reason of alleged failure of defendants to comply with statutory requirements in respect of providing and maintaining proper and efficient ventilation for removing dust at the place wherein Mr. Golden was employed, it was his claim that he contracted pneumoconiosis or silicosis, later developing to what medical experts say is "superimposed tuberculosis." These ailments are diseases of the lungs. Pneumoconiosis is said to be caused by the deposit of particles of matter of any kind in the lung. Silicosis, as the name implies, is caused by the deposit of silica in the lung. Both are caused by the inhalation of minute particles into the respiratory system. Ordinarily, the lung and the nasal passages thereto are able to sift, eliminate, and throw off such foreign particles. The processes of expectoration and drainage are generally sufficient to safeguard the worker. But inhalation of dust containing silica, while harmless as long as these processes adequately function, results, if these fail, in nature isolating these particles of silica by creating a tissue to wall them off. The new tissue thus formed results in the development of fibrosis, a scar tissue, which causes the normal lung tissue to harden, thereby losing its elasticity and appropriate respiratory functions. The inhalation of silica particles is harmless only to the point that the lung and air passages leading thereto can eliminate it. The mere inhalation does not necessarily cause injury. Rather the injury is the cumulative effect of successive inhalations which cause such large amounts of silica to be deposited in the lungs as to overcome their normal functioning. In that event fibrosis progresses until the lung and its functions are so far destroyed that the victim is rendered easily subject to infection, especially tuberculosis. Both silicosis and pneumoconiosis are frequently followed by tuberculosis,

in either of which event the patient is said to suffer with "tuberculosis superimposed." Both are diseases insidious in character, generally slow in onset and progress, but not always so. Dr. Tuohy testified: "The most dangerous dust to the lungs that we know anything about is the dust of silica  *  *  *  It is characteristic of silica to stealthily proceed and often causes its chief damage after a man leaves the exposure to dust." As to when the danger line is reached no one can tell with any degree of certainty. Much depends upon the capacity of the individual to throw off, eliminate, or minimize the onslaught of the forward progress of the particular ailment.

Plaintiff was exposed to dust containing silica at least from the time of his employment in 1917 until August 8, 1929, the latter date being the time when the corporate defendant was created and took over the business of the partnership. From that time until he quit he was not subjected in any substantial degree to the inhalation of dust because, so he testified, "I wasn't in the crusher house much after that"; the work "was not very dusty," and he was "not making any claim for that." There is much other testimony to substantiate his statement. Many witnesses called for defendants verified its truth. As a matter of fact, plaintiff's counsel in their brief say: "We concede that a directed verdict as against the corporate defendant (Lerch Bros. Inc.) was unobjectionable and that it is only as to it that the verdict should have been directed."

We refrain from further statement of facts at this point, intending to cover such additional facts as may be necessary in discussing the various phases hereafter considered.

Defendants (the copartners and the corporation) separately moved for direction of verdict. Each motion was denied. The case was then submitted to the jury on the theory that they might find there was joint liability, hence that a general verdict might be returned. As has been noted, the jury returned such a verdict against all defendants. Thereupon defendants George and Fred Lerch, individually and as copartners, and the corporate defendant as well, separately moved for judgment notwithstanding, there being no

motion for new trial by anyone. The court granted the motion as to all defendants. Judgment accordingly was thereafter entered, and plaintiff appeals from the same.

■ Where there is a motion for judgment notwithstanding the verdict but no motion for new trial, error on appeal can reach only the single question of whether there is any substantial evidence in support of the judgment. By resting solely upon a motion for judgment a defeated party waives all errors which would be ground only for a new trial. 3 Dunnell, Minn. Dig. (2 ed. & Supps.) §§ 5082, 5085, and the many cases cited under the notes.

■ Is there any evidence of a substantial nature justifying a verdict against the corporate defendant? We have searched the record with care and have come to the conclusion that any recovery as against it lacks support and cannot be sustained. Not to exceed a month during the fall of 1929 was plaintiff exposed to dust and then only at infrequent intervals. Whatever inhalation of dust he may have been subjected to during that period would obviously be so trifling in amount that no one, whether professional or layman, could possibly say from the record that any aggravation had taken place in respect of further accumulations of harm-producing particles in plaintiff's lungs. This being the situation, and in view of counsels' candid admissions:—"* * * it is perfectly clear that it was impossible for the plaintiff to be affected by the dust in the crusher room of the defendant corporation, except prior to September 7, which includes the period commencing August 9, 1929, to September 7, 1929, a period of one month, and that during that month he received into his lungs little or no dust from the crusher room of the defendant corporation. * * * in our case the evidence is practically conclusive that whatever damage was suffered was suffered as a result of the wrong of the defendant copartnership and not of any wrong on the part of the defendant corporation,"— we can see no basis for liability as to it. The factual situation utterly fails to establish that its acts or failure to act was a material element or substantial factor in the happening of the harm

to plaintiff. The judgment for the corporate defendant must therefore stand.

■ As to the copartnership defendants, a different situation exists. Over a period of more than 12 years plaintiff was subjected to the inhalation of large quantities of dust, much of it containing silica. During this time he was working in two small buildings practically adjacent. In the crusher house, a building 12 by 14 feet and about 10 feet in height, was where iron ore samples were crushed, sifted, mixed, dried, and pulverized by machinery and hand devices until the compound would be reduced to such minute particles of matter as to pass through a mesh with 10,000 openings to the square inch. The mixture had to be reduced to the fineness of flour. The next building, also a small one, constituted the laboratory for the chemical analysis of the samples prepared in the crusher house. The ore samples, especially "drill samples," contained large percentages of silica. Plaintiff testified that some of these contained as much as 60 per cent. Witnesses for defendants claim the average was 11.685 per cent. There is much testimony to the effect that the dust was "thick, hanging in the air all the time"; that the place was "hazy" while the work was going on. Plaintiff was exposed to this situation on an average of from two to three hours each day and from six to seven days per week during the seven to eight months of operation in each year of his 12 years' employment by the partners.

The causal connection between this situation and plaintiff's subsequent ailments is, we think, adequately supported. "X-rays of his chest show decisive trouble at the upper portion of both lungs." The "diagnosis of the case, through the findings, including the history and physical examination and an interpretation of the X-rays, was that he had pneumoconiosis, superimposed by a tubercular trouble, tuberculosis infection, involving both lungs. * * * My opinion is that the men who work in dust-laden atmosphere, particularly certain types of dust, over a period of years, are known to have— to be found with this condition we call pneumoconiosis. That is the effects of the dust particles on the lung tissues. * * * It is usual-

ly very insidious, very slow in its onset and very slow in its progress. * * * In an analysis of a great many cases that is shown to be true, that he can continue with his work for a long time with a considerable degree of pneumoconiosis. * * * One of the greatest complications we have in pneumoconiosis is the tubercular infection. * * * given a case where the man is not exposed continuously to dust, it usually takes longer for the development of pneumoconiosis or silicosis than it does where he is exposed continuously to that dust, does it not?"

There is much other testimony to the same effect, but we refrain from further quotation. The factual situation is clearly one where the plaintiff made a case sufficient to go to the jury. As such we cannot say the verdict against the copartnership defendants is without support. Necessarily we have related the evidence in the light most favorable to plaintiff. Needless to say, there is much testimony, medical and otherwise, opposed thereto. But the issue presented was one of fact and as such for the jury.

■ We are not persuaded that the record is such' that we may say, as a matter of law, that the expert testimony for plaintiff has for its foundation nothing except speculation and conjecture. On the one hand, we have here plaintiff's employment over a long period of time during which he was exposed to much dust containing silica; in addition, that he became afflicted with silicosis. From the time he left this kind of employment in January, 1930, until some time in the spring of 1933, he was not engaged in any kind of endeavor where breathing of dust entered into his daily life. At that time he was taken sick with influenza. Before fully recovering he caught a bad cold. A dry cough ensued. He soon began losing weight. That summer it was definitely found by his medical advisers that he was suffering from pneumoconiosis or silicosis with "superimposed tuberculosis."

"The best manner in which to determine whether a given act is the proximate cause of a given result is to determine whether that act is a material element or a substantial factor in the happening of that result. Whether a given act of negligence is the proximate

cause of a given injury depends upon the peculiar facts of each case. No general, broad rule can be formulated. As was said in Moores v. N. P. Ry. Co. 108 Minn. 100, 101, 121 N. W. 392:

" 'Theorize as we may on the subject of proximate cause, it is in its last analysis a question of good common sense, to be solved by a practical consideration of the evidence in each particular case.' " Peterson v. Fulton, 192 Minn. 360, 364, 256 N. W. 901, 903.

Is there any doubt that medical opinion is an appropriate means to employ to provide the connection between plaintiff's employment and the resulting condition? We think not. Expert testimony is admissible to aid the triers of fact in cases in which the subject of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon technical or scientific questions without the assistance of those who have peculiar skill in respect to the subject matter in hand. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3325, and cases under note 33. "Often expert testimony necessarily goes directly to the main issue and is the only form of evidence by which it can be determined." Id. § 3326; 21 Minn. L. Rev. 25-26, and cases under note 34. In State v. Oliver I. Min. Co. 198 Minn. 385, 406, 270 N. W. 609, 620, we said, in respect to the contention that certain estimates furnished by experts were conjectural and unreliable:

"Opinions founded upon expert knowledge cannot be classified as conjecture but rather as helpful guides in finding just results. Some experts are worthy of belief, and their testimony, because of their standing in the profession and the reasonableness and convincing qualities of their testimony, may be highly regarded; others may not be so qualified. With the trial court rested the duty of determining this fact issue."

In that case the trial court was persuaded thereby; here this issue as one of fact was heard and determined by the jury. In either event, to the triers of fact must be left the burden of determining conflicts of this nature.

It is also urged that plaintiff's cause was left in a realm of speculation and conjecture because proof is lacking as to how

much, if any, of his injury was caused within the six-year statutory period of limitation. It is claimed that the ventilation statute, as and when violated, created a tort liability each moment that harmful dust was inhaled into plaintiff's lungs; that no matter how slight each such injury might be, nevertheless there was a harm and consequently a wrong for which an action would lie; that inasmuch as this cause was not commenced until June 12, 1934, all injuries antedating that date by more than six years should be barred. Also that the record fails to disclose what, if any, particular injury occurred to plaintiff while employed by the partnership and how much more was incurred while employed by the corporation.

The bar of the statute was raised by appropriate allegations in defendants' answers, denied by plaintiff in his reply. It is of course a recognized rule "that the statute of limitations is an affirmative defense which imposes the burden upon the one asserting it of proving every element necessary to establish it." Andrews v. Andrews, 170 Minn. 175, 185, 212 N. W. 408, 412, 213 N. W. 899, 51 A. L. R. 542.

Another well established principle is that "where the statute has been set up in bar of a right of action, and the plea has been traversed, the statute is generally considered an affirmative defense, and the burden of proof is on those seeking to avail themselves of its benefit to show that the cause of action has been barred thereby. And where part of the plaintiff's demand is barred and part is not, the defendant is obliged to prove specifically the part that falls within the protection of the statute." 17 R. C. L. pp. 1003-1004, § 385. In this case there was no proof adduced to show when, if at all, plaintiff's claim was barred. Where, as here, the entire burden of defendants' argument is founded upon the claim that there can be no recovery at all, their contentions must fall, as it clearly appears that plaintiff's injury did not develop into anything substantial until long after his employment had ended, although well within the six-year limitation. "Hence, negligence without injury or damage gives no cause of action; to support the action there must be not only the negligent act, but a consequential injury, the

injury being the gravamen of the charge." 1 Am. Jur., Actions,
§ 31. In Whittaker v. Stangvick, 100 Minn. 386, 388, 111 N. W.
295, 296, 10 L.R.A.(N.S.) 921, 117 A. S. R. 703, 10 Ann. Cas. 528,
this court said, and we think the language is quite appropriate here:

"With respect to damages as an essential, the common law recog-
nizes two kinds of actions. In the first class there is a direct in-
vasion of another's person or property without permission, which
is actionable per se, or which gives rise to a presumption of at least
some damage, without proof of any actual damage. Unpermitted
contact with the person constitutes assault and battery. Unper-
mitted invasion of premises constitutes a trespass quare clausum
fregit. *In the second class, actions on the case, in which the dam-
ages are indirect and consequential, there can be no recovery un-
less the plaintiff shows, as an essential part of his case, that dam-
ages, pecuniary in kind, proximate in sequence, and substantial in
extent have resulted.*" (Italics supplied.)

The evidence establishes that harm to plaintiff came about by
slow processes of accumulations of silica dust in his lungs over a
long period of time before the disease became an active agency in
the development of tuberculosis. Only after the normal functions
of his respiratory organs failed to eliminate these foreign particles
did the dreaded and stealthily moving disease develop. Silicosis
has been recognized as an occupational disease and is covered by
the compensation acts of several states. It has not been included
in ours. But we hope the time is not far distant when it will be.
As this case now stands, however, it is our plain duty to recognize
and apply the usual standards applicable to ordinary negligence
cases. The statute has fixed the standard of conduct. It was
violated, and harm to plaintiff resulted. Here, as in Fredrickson
v. Arrowhead Co-op. Creamery Assn. 202 Minn. 12, 18, 277 N. W.
345, 348:

"A careful consideration of the record herein leads to the con-
clusion that the finding of the jury that defendant's negligence in
failing to provide for plaintiff a proper place in which to work, in

violation of the statutory requirements, was the proximate cause of the impairment of her health."

■ Lastly, it is urged that plaintiff was guilty of contributory negligence barring him of his right of recovery. If we assume contributory negligence was a permissible defense, see Suess v. Arrowhead Steel Products Co. 180 Minn. 21, 230 N. W. 125, yet the fact remains that the issue was submitted to the jury and by them decided adversely to defendants' contentions. The evidence in the case was such as to make this a fact question.

As to the corporate defendant the judgment is affirmed; as to the others it is reversed.

PETERSON, JUSTICE (dissenting).

■ Except as to syllabus 2, I concur in the majority opinion as a restatement of the views expressed in the original opinion filed in this matter. The original opinion received favorable comment in 21 Minn. L. Rev. 616, and 25 Calif. L. Rev. 443. See Dean Wigmore's article in 17 Ill. L. Rev. 458, reprinted in 9 Va. L. Reg. (N. S.) 154.

■ I dissent from the views expressed in syllabus 2, because in my judgment it was a fact question whether the acts of the corporation caused or contributed to plaintiff's injuries. The facts were resolved against the defendants by the verdict of the jury in favor of plaintiff.

Plaintiff's argument that judgment should be rendered only against the partnership individuals and not against the corporation is not now in the case because that argument was withdrawn upon the reargument. This argument was properly resolved against both the plaintiff and the defendants in the original opinion upon the grounds that the defendant contended that such a judgment could not be rendered and that judgment had to be rendered against all or none of the defendants. The basis of the defendants' argument was that inasmuch as plaintiff's condition was caused by the acts of all the defendants, no one or more of the defendants could be held solely liable for the acts of all the others on appeal after verdict in favor of the plaintiff based on the jury's finding that the acts of

all the defendants contributed to the injury. The theory of the plaintiff, sustained by abundant evidence, is that he sustained a single injury not assignable in parts to the respective wrongdoers, for which they were liable because their acts concurred in result even though they were successive in point of time. It appeared that plaintiff worked for the partnership and the individual defendants from 1917 to August, 1929, and for the corporation from August, 1929, to January, 1930. During that time plaintiff was continuously exposed to silica dust which he inhaled during all of that period. The corporation continued the operation of the partnership business and plaintiff's employment so that the employment and the conditions thereof were continued by the corporation without any change or break of any kind, except the substitution of masters, of which plaintiff knew nothing until long after the corporation had taken over the business. The acts of the partnership and the corporation consisted of a continued violation of the statute which exposed plaintiff to continued inhalation of silica dust resulting in the one injury, silicosis. The silica was implanted on plaintiff, particle by particle, over a period of many years. It is not known when it became active and when damage was first done. Plaintiff became sick in March, 1933, with the influenza, and shortly thereafter it was discovered that he had silicosis. There is medical testimony to show that the silica may have been spread over the lung tissue by influenza so as to cause the fibrosis which is the cumulative effect of successive inhalations of silica and which results in destruction and loss of function of the lung tissue.

It is not feasible to set out in detail the testimony to sustain the jury's finding that plaintiff was exposed to silica dust which he inhaled during the time he was employed by the corporation, to such an extent as to cause or aggravate his condition. The evidence shows that during the time plaintiff was employed by the corporation his exposure to silica dust was substantially identical with that of any previous period of employment by the partnership, and that it was so substantial in character as to justify the jury in finding that it was a contributing cause of plaintiff's injury. De-

fendants, in a memorandum filed with the court, well stated the evidence as follows:

"What has been claimed in respondents' [defendants'] brief and on the oral argument was that the exposure to dust of which plaintiff complains was substantially the same during the last six months of his employment by defendant corporation as it was during any corresponding period of time during the preceding years, and that in view of the fact that plaintiff's own testimony and that of his medical expert, Dr. Tuohy, demonstrates that as late as 1926 and 1927 he showed no symptoms of silicosis, it cannot be said as a matter of law that the exposure to which he was subjected during the last six months of his employment by defendant corporation did not contribute to some extent to cause or to aggravate any trouble with which he might have been suffering due to his previous exposure, conceding for the sake of the argument that the affliction of which he complained was caused or contributed to by exposure to dust.

"That plaintiff's exposure during the last six months of his employment was substantially identical with that of any similar previous period is abundantly established by the following: [References to the record to sustain the statements in the above quotation.] .* * *

"It is clear that what the plaintiff meant by the foregoing statement is that he was not 'in the crusher house much after' he moved from the Bennett laboratory to Nashwauk, which occurred the latter part of November, 1929. His testimony is clear that as long as he was at the Bennett laboratory he was subjected to the same general condition. In that connection he testified: [References to the record.]"

As to the effect of said evidence, defendants stated in their memorandum:

"It is generally conceded that after Mr. Golden's transfer in the latter part of November, 1929, from Bennett to Nashwauk he was not subjected to as much dust there as at the Bennett laboratory. Yet, the record contains considerable amount of testimony that the

jury could, if they wished, find that he was subjected to a considerable amount of dust while employed at the Nashwauk laboratory. [References to the record.]"

The finding of the jury is supported by the evidence, and the verdict should stand as to all defendants.

GALLAGHER, CHIEF JUSTICE (dissenting).

I concur with the views expressed by Mr. Justice Peterson.