HARRY C. APPLEQUIST, SPECIAL ADMINISTRATOR, SUBSTITUTED FOR GEORGE SIMON, DECEASED, v. OLIVER IRON MINING COMPANY.[1]

January 17, 1941.

No. 32,527.

[1]Reported in 296 N. W. 13.

*Austin & Wangensteen,* for appellant.

*Dennis F. Donovan, Elmer F. Blu,* and *Clarence J. Hartley,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from a judgment entered pursuant to an order granting defendant's motion for judgment notwithstanding the verdict.

The action was brought in 1939 by George Simon to recover damages for personal injuries claimed to have been caused by defendant's failure to provide or maintain an adequate system of ventilation in its underground mines where he was employed as a miner over a period of several years. Drills and jackhammers were used by the miners in their work of cutting drifts, rocks, or slices of ore, and by reason thereof fumes, dust, and particles of silica were created and caused to be diffused through the air, where they remained suspended in the places where Simon and other miners were employed. These alleged deleterious substances "were inhaled" by Simon "into his lungs, gathered into and lodged in his respiratory system continuously until there was deposited in his lungs large quantities of said dust and silica particles, and other substances" equally harmful. As a result, it is claimed that he thereby and therefrom contracted "a pulmonary dust disease, commonly known as pneumoconiosis, sometimes called silicosis, and a serious lung ailment with other complications."

Defendant specifically denied that it was at fault in any of the respects claimed. It averred that the mines in which the work was being done were efficiently ventilated with shafts, fans, blowers, and tubes which operated to change the air in each working place every four or five minutes.

In submitting the issues to the jury the court read what it deemed the applicable statute (1 Mason Minn. St. 1927, § 4174):

"In every place of employment the employer shall provide in each workroom thereof, proper and sufficient means of ventilation, and shall maintain proper and sufficient ventilation. If excessive smoke, steam, gas, fumes, vapors, dust or other impurities are created or generated by the manufacturing process or handicraft carried on therein, in sufficient quantities to obstruct the vision, or to be irritating, obnoxious, or injurious to the health or safety

of the employes therein, the rooms shall be ventilated in such manner as to remove them or render them harmless, so far as is practicable."

In this connection the court said amongst other things:

"The plaintiff claims that the defendant did not comply with the statute and that it was practicable to more efficiently ventilate his working places. You will have to determine from the evidence what the fact is. If the mine was sufficiently ventilated, or if the defendant had done everything that was practicable to ventilate it, it had done all that was required of it and there would be no negligence in the case. * * *

"The defendant denies that the plaintiff ever contracted silicosis while working for the defendant and claims his disability is caused exclusively by pulmonary tuberculosis and syphilis, the evidence indicating, and *you will take it as a fact, that before and at the time plaintiff worked for defendant * * * he was afflicted with tuberculosis and also with syphilis. His employment at those mines had nothing to do with his contracting tuberculosis or syphilis.* * * * Unless the evidence shows that he contracted silicosis while working for the defendant and that evidence be of a character to establish that fact by a fair preponderance of the evidence, there can be no recovery by the plaintiff. * * *

"The burden is upon the plaintiff to prove by a fair preponderance of the evidence that the defendant was negligent in the respect claimed, that such negligence was a proximate or direct cause of his injury, that he contracted silicosis as a result thereof and that such silicosis, at least in part, caused his disability. * * * He cannot recover either for pulmonary tuberculosis or for syphilis. *He may recover only for such aggravation of his prior condition that is caused by silicosis."* (Italics supplied.)

The jury, after long deliberation and by a five-sixths verdict, found for plaintiff, assessing his damages at $7,025. Defendant made the usual blended motion for judgment *non obstante* or, if that be denied, for a new trial. The former was granted and

judgment entered. Shortly thereafter Simon died. The administrator of his estate was substituted as plaintiff and in that capacity prosecutes this appeal.

Attached to the order granting the motion for judgment is a comprehensive memorandum summarizing the entire case, wherein it is said:

"I am of the opinion that the ventilation statute applies to mines such as the ones in question here, and that the question as to whether or not the statute had been violated was properly a jury question, and the determination of the jury thereon is based on sufficient evidence to support its finding." But, continued the court, "I am *not at all satisfied* that the evidence is sufficient to sustain a finding that the plaintiff contracted silicosis while working for the defendant * * * *nor* * * * *that he had silicosis at all.* * * * plaintiff had had pneumonia, rheumatism, lumbago, tuberculosis and syphilis" long prior to his employment by defendant, and his own physician had testified that the tuberculosis in plaintiff's system " 'had probably existed since adolescence.' " So, "considering the whole record," the court was "of the opinion that the plaintiff has wholly failed to sustain the burden which is required of him that he has silicosis, and that the testimony of the doctors who appeared on the part of the defendant to the effect that he has just a plain case of far-advanced pulmonary tuberculosis aggravated by his syphilitic condition has been established by an overwhelming preponderance of the evidence." The conclusion reached was that the jury's "finding that he contracted his silicosis while in the employ of the defendant is left, in my judgment, too much to speculation and conjecture to permit it to stand as the basis of a verdict." (Italics supplied.)

While other reasons are assigned, we think those mentioned furnish the bases upon which the order must rest.

We have quoted rather freely from the instructions and the memorandum because from them may be gathered the determinative issues presented. The problems for our decision lie within a limited field, and to these we shall now direct our attention.

■ Assuming that the ventilating statute is applicable to underground mines (defendant asserts that it is not) and that the court was right in holding that there was evidence sufficient to go to the jury of defendant's violation thereof, the first problem presented is whether the court can say, as a matter of law, that upon the entire record the evidence for the defendant so "overwhelmingly preponderates" in its favor that a verdict for the plaintiff would have to be set aside by the court as its "manifest duty." We have always recognized and applied the rule that a motion for direction of verdict presents only a question of law to be determined by the court, a right "to be cautiously and sparingly exercised." While that right "is a corollary to the right to grant a new trial," the "test is not whether the court might in the exercise of its discretion grant a new trial," but whether "it clearly appears   *   *   * that it would be its manifest duty to set aside a contrary verdict." · 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 9764, and cases cited under notes. Or, as said in Thompson v. Pioneer-Press Co. 37 Minn. 285, 289, 33 N. W. 856, 859, whether the testimony for plaintiff is so "entirely unworthy of credit" that it "should not be accepted by any court or jury as the basis for a verdict." The same thought was recently restated in Brulla v. Cassady, 206 Minn. 398, 410, 289 N. W. 404, 410, in which we quoted with approval from Pennsylvania R. Co. v. Chamberlain, 288 U. S. 333, 343, 53 S. Ct. 391, 395, 77 L. ed. 819, 824, that "where the evidence is 'so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury.' "

The rule is plain and of long standing. Difficulty arises, not as to the rule itself, but in its application, as is abundantly shown by our own cases as well as cases in other jurisdictions.

■ Reviewing the record as a whole, we think the evidence is such as to present a jury issue on the question of Simon's claim that he contracted pneumoconiosis or silicosis in defendant's mines and thereby became afflicted with an aggravation of his then existing ailments. The case is one of the borderline type. If the

court in the exercise of its discretion had granted a new trial there can be no doubt that such an order would have to be sustained on appeal, for there is persuasive evidence in the record upon which the court might well conclude that plaintiff's condition was "just a plain case of far-advanced pulmonary tuberculosis aggravated by his syphilitic condition." There is, however, competent opposing evidence, so we cannot say as *a matter of law* that there was no fact issue to go to the jury.

■ Defendant claimed at the trial, and is equally insistent here, that the "ventilating statutes do not apply to underground mining." Its claim is that the legislative history of this and other acts when construed according to "accepted rules of statutory construction" compels that conclusion; also, that certain cited cases point to the same result. We shall consider these claims in the order mentioned.

We are directed to the provisions of 1 Mason Minn. St. 1927, § 4235, having its origin in L. 1905, c. 166, entitled, "An act to provide for the appointment of inspectors of mines * * * to prescribe their powers and duties," etc. (now 1 Mason Minn. St. 1927, c. 23, § 4233, *et seq.,* under the heading "Inspectors of Mines"), § 4235 of which reads:

"In case the inspector of mines shall find that a place is dangerous from any cause * * *, it shall be his duty immediately to order the men engaged in work at the said place to quit work, and he shall notify the * * * person in charge, to secure the place from the existing danger, * * * and shall * * * specify the work to be done, or change to be made to render the same secure, ordinary mine risks excepted."

In the exercise of his powers and duties, the inspector of mines apparently has occupied a very limited field. On the subject of ventilation that is made very plain by the testimony of the inspector having the area here involved in hand. He testified that he had no knowledge "with reference to dust" and professed no "expert knowledge with reference to ventilation conditions." Nor

had he attempted "to make any study of dust"; in fact he was not "looking for anything relating to hazards of inhaling dust or anything of that kind."

The ventilating statute did not come into our law until some 14 years later by L. 1919, c. 491, "An act to promote the health and safety of employes in all places of employment," etc. (now 1 Mason Minn. St. 1927, § 4171, *et seq.*), § 4171 of which reads:

"The term *'all places of employment'* as used in this act *shall mean any place, either inside or outside, where any* business or *industry is carried on and in which persons are employed and shall include * * * engineering works, * * ** but shall not be construed to apply to domestic service or agricultural labor." (Italics supplied.)[2]

The substance of defendant's argument is that the first quoted section (4235) alone applies in this case since the legislature has not by subsequent legislation directly amended it. And, as repeal or amendment by implication is not favored (West India Oil Co. [Puerto Rico] v. Domenech, 311 U. S. 20, 29, 61 S. Ct. 90, 85 L. ed. Advance Opinions, 37, 41; 6 Dunnell, Minn. Dig. [2 ed. & Supps.] § 8927), therefore it must be considered as still in full force as and when originally enacted, free from the requirement of the subsequent act. Consequently, the argument continues, inasmuch as the inspector in the discharge of his official duties has not condemned either of the mines in which Simon worked, "or required the employes to quit work and to leave the place of work on account of unsafe conditions," there has been no violation of statutory duty and hence no liability can attach. Furthermore, and

---

[2] As to the meaning of the term "engineering works," our legislation furnishes an interesting background. By G. S. 1894, § 2264, "the term 'public or private works' means any mine, * * * the work of constructing any * * * tunnel." In R. L. 1905, § 1790, "the term 'engineering work,' * * * shall mean any work of construction, [or] operation * * * of the works of any * * * mining company." By L. 1913, c. 518, § 7, the same definition was employed; and, as we have seen in the quotation above, the change now is to the effect that "all places of employment" shall include "engineering works."

as illustrative of the ineptness of the later act to underground mining, it said that the "object of underground mining is to remove iron ore, * * * in this case, of some 1,200 feet below the surface. It is a tunneling down and in at right angles, this way and that and up again * * * as the view of iron ore beckons the industry on. This necessitates the removal of an enormous tonnage of ore and waste materials." What would be practicable for the "places of employment" in other lines of industry "would be most impracticable and visionary and unreal in underground mining." Therefore, so the argument goes, § 4174 was erroneously permitted to come into the case as the basis for Simon's right of recovery.

In Golden v. Lerch Bros. Inc. 203 Minn. 211, 281 N. W. 249, the plaintiff had contracted silicosis or pneumoconiosis, which later developed into superimposed tuberculosis. True, in that case his work was aboveground. In that respect there is a distinction. But the cause of plaintiff's harm there is the same as the cause of Simon's. If defendant's argument is sound then the operator of an underground mine of 100 feet or less would be absolved from the provisions of the ventilating statute. The conditions surrounding the workmen in such a case could well be the same as those in which Simon was required to work. Upon what basis in law or logic is there a distinction between the cause bringing harm to Golden and that which brought similar injury to Simon?

The cases to which defendant refers and upon which it places special reliance are two cases heard and determined by the district court of St. Louis county, in each of which it was held that the ventilating statute was inapplicable to underground mines. In answer to these plaintiff refers us to a case in the federal district court there where the opposite conclusion was reached. And, as we have seen, the trial judge here was of the same opinion as the federal judge. So the score of trial courts' views is an "even break."

We are also referred to Wickstrom v. Thornton Bros. Co. 191 Minn. 327, 330, 254 N. W. 1, 2, where we said by way of dictum:

"While the complaint describes the tunnel and in some degree the shaft, even if we assume the practicability of adequate ventilation, we do not feel justified in determining, on the pleadings alone, the application of the statute [1 Mason Minn. St. 1927, §§ 4171 and 4174] invoked by plaintiff. We entertain grave doubt as to its applicability even if the facts including practicability of ventilation are proved as charged."

There is therefore no determinative decision upon which we may lean unless Pryor v. National Lead Co. (8 Cir.) 87 F. (2d) 461-465, furnishes the means. The plaintiff there sued "to recover damages for an occupational disease" claimed to have been contracted "while employed in the defendants' lead mines." His principal work had consisted of "operating a drilling machine * * * during the process of mining." While so operating the machine, "dusts containing lead and other chemicals and metals were created and spread throughout the inclosures where the plaintiff worked; that as a result of inhaling these dusts daily, the plaintiff slowly contracted pneumoconiosis and an incipient tubercular condition." Defendant in its answer, in addition to pleading the general issue, alleged that the mining code of Missouri "limited the rights and remedies, as to alleged occupational diseases, of persons employed in mines to the provisions of that code." So the only "question submitted for determination" was whether the provisions thereof were "applicable to employers and employees engaged exclusively in mining." The act upon which plaintiff relied had to do with the protection of public health "from the dangers of occupational or industrial diseases," and it was made the duty of the "factory inspector" to inspect all places of employment covered by the act and to enforce its provisions. The court was of the view that "the act, in so far as it relates to employees handling minerals, was intended to apply to those engaged in processing, and not to those engaged in mining." In addition, said the court, "there are other indications that it was not intended" by the legislature that laws having to do with factory inspection should apply to persons engaged in mining. The two acts, one creating

the bureau of mines and directing the appointment of a chief mine inspector, "whose duty was to classify, supervise and direct the work of inspecting mines," and the other relating to manufacturing and processing, the enforcement to be in the hands of a factory inspector, were both passed by the same legislature within two days of each other. Inasmuch as the mine inspection act carried with it an emergency clause reciting "the fact that closer and better inspection is at once needed for the health and safety to the miners," whereas the other contained no emergency clause, it was thought "improbable that the Legislature, at approximately the same time that it provided for improved mine inspection by a chief mine inspector, passed the act with which we are here concerned with the intention that it should apply to miners, with exclusive administrative authority vested in the state factory inspector."

Obviously, this case lends little, if any, aid to defendant. More in point, we think, by analogy at least, are Donnelly v. Minneapolis Mfg. Co. 161 Minn. 240, 201 N. W. 305, and Fredrickson v. Arrowhead Co-op. Creamery Assn. 202 Minn. 12, 277 N. W. 345. We have already cited and commented upon the case of Golden v. Lerch Bros. Inc. 203 Minn. 211, 281 N. W. 249.

The use of the machine in industry has brought about, often tardily, a gradual development and enlargement of legislation for the protection of those who labor in industry. Acts relating to hours of labor, the employment of minors and women, sanitary conditions, ventilation and heating of places of employment, toilet facilities, and many other provisions have come into our law. Such laws have been sustained by this court. We shall not attempt to recite these many enactments or to paint their historic background. All are available and well known to the bench and bar. But it is interesting to note that as far back as G. S. 1866, c. 24, the time of labor by children under 18 years of age, and by women, was limited so as to "not exceed ten hours for each day." This law applied only to "all manufactories, work-shops, and other places used for mechanical and manufacturing purposes." Viola-

tion carried with it punishment by a fine of $10 to $100. As one runs through the annotations it will be found that this act, enlarged from time to time, has come down through the years until now it appears in its modified form in 1 Mason Minn. St. 1927, § 4087. The broad and enlarged scope of this trend is well illustrated by L. 1919, c. 491, now embraced in 1 Mason Minn. St. 1927, §§ 4171 to 4190, inclusive. To accomplish the legislative purpose, we should make the act workable by a fair rather than a strict construction and apply it as generally and uniformly as the statute contemplates.

So viewing it, we think that L. 1919, c. 491, the ventilating statute, is an addition to and an enlargement of the duties cast upon industry in general, for the obvious purpose, so far as practicable, of protecting those employed by it; that it applies to underground mining; and that where, as here, an underground miner has become afflicted with a disabling ailment not covered by the compensation act, through negligence of the employer amounting to the omission of a statutory duty, *viz.*, the failure of the employer properly to ventilate an underground mine where the employe worked, such employe has an action at law for damages.

■ Just one thing more: We note that the court denied defendant's motion for new trial but granted the first alternative of judgment *non obstante*. As the case must be reversed as to that part of the order granting judgment, we are of the view that the alternative motion, *i. e.*, that relating to a new trial, should be left open so that defendant, if so advised, may renew its motion in that behalf, and that the court may reconsider the same as freely as if only the former alternative had been granted. It is so ordered.

Reversed and remanded.

Mr. Justice Stone took no part.