WILLIAM L. HANRAHAN v. SAFWAY STEEL SCAFFOLD COMPANY OF MINNESOTA.
STEWART W. JAMESON v. SAME.[1]

February 9, 1951.

No. 35,280.

[1]Reported in 46 N. W. (2d) 243.

172

*William H. DeParcq, Donald T. Barbeau,* and *Chester D. Johnson,* for appellants.

*Meagher, Geer & Markham* and *Clyde F. Anderson,* for respondent.

Frank T. Gallagher, Justice.

Appeal from an order of the district court denying the motion of plaintiffs for a new trial.

Plaintiffs were employed as painters by the M. & M. Painters & Decorators (hereinafter called M. & M.), which had a contract with the A-B-C Corrugated Box Company (hereinafter called the box company) for the painting, among other things, of the steel girders in its warehouse. These girders were located about 24 feet above the cement floor of the warehouse, and in order that plaintiffs could reach these girders M. & M. rented a steel scaffold from defendant. The scaffold supplied by defendant was a used one and was delivered disassembled to the box company warehouse. It consisted of various parts, which, when fitted together, formed a scaffold approximately 5 x 7 feet in surface area and approximately 21 feet high, including the caster-type wheels and

the adjustable legs upon which it was mounted. It appears that the scaffold could be assembled in only one way, and it was so assembled by Orville R. Mitchell, an employe of M. & M., assisted by plaintiff Hanrahan. It was delivered to the warehouse eight days prior to the date of the accident and had been used for several days without incident in connection with the painting of the girders. As plaintiffs completed painting as much of the girder as they could reach from their platform on top of the scaffold, it was necessary to move the scaffold to another unpainted portion of the girder. This was accomplished by calling to Mitchell, who also acted as painting foreman and was on the floor doing various other jobs. He would thereupon unlock the wheels and push the scaffold to a new position while plaintiffs remained on the platform on top of the scaffold and helped guide the scaffold from above by grasping the girders. After the scaffold had been moved to a new position, plaintiffs would resume their work.

The accident occurred at a time when plaintiffs were standing on one side of the platform on top of the scaffold, which had been centered beneath a girder. Usually, when one man had finished painting his side of the girder he moved over to the other side to help the other finish. Plaintiff Jameson said that he had gone to Hanrahan's side of the girder, had set his paintpot down, but still had the brush in his hand, when suddenly he "felt something beneath us * * * give way or break." Hanrahan testified that when Jameson came over from his side and was getting ready to help him, "All at once something gave way and we fell back." It appears from the record that the scaffold fell to the ground and that plaintiffs were thrown onto the floor. Mitchell testified that the scaffold was moved in the manner described above and that after each movement the wheels were locked with the brakes provided thereon. Plaintiffs testified as to the manner of painting and as to their observations in connection with the accident as set forth above.

A structural engineer was called as an expert witness on behalf of plaintiffs. He was asked three hypothetical questions with respect to the falling of the scaffold, but the trial court, on objection by defendant that they were not proper questions to put to an expert witness, in that such interrogation would invade the province of the court and the jury, would not permit him to answer. Plaintiffs sought to establish by the hypothetical questions (1) that it would not be possible for the two men, with their equipment, to place themselves in a place or position atop the scaffold so as to cause it to tip by distribution of their weight alone; (2) that there was some structural defect which caused the tipping; and (3) that, if the scaffold were tipped to such an extent that the men would be able to get themselves in such a position, by distribution of their weight alone, as to tip over the scaffold, such tipping or leaning would have been apparent to the naked eye of a person on the floor below. The court sustained defendant's objection, whereupon plaintiffs made an offer to prove the above, and objections to this offer of proof were sustained.

Fred S. Graser, president of defendant, testified in part as to the general construction and arrangement of the scaffold. He explained that there was only one way in which the various pieces could be fitted together and that if each piece or part was not placed properly the next piece would not go on. On cross-examination, he testified that he had examined the scaffold four or five days after the accident; that by that time the scaffold had been disassembled; and that his examination revealed two broken angle braces and one broken cross brace. He said also that the angle braces bore weight and that the cross braces were stabilizers.

When plaintiffs rested and defendant rested provisionally, the latter moved the court to direct a verdict in its favor on the ground that plaintiffs had failed to establish any actionable negligence proximately causing the injuries to plaintiffs and that there was an utter lack of proof of any negligence or omission

or any defect in the equipment upon which a jury verdict could be sustained. Plaintiffs thereupon moved the court for permission to amend their complaints to cover the feature of breach of warranty. Defendant then added to its motion for a directed verdict that there was no evidence upon which it could be concluded that there was a breach of implied warranty and that it appeared conclusively from the evidence that the scaffold was suitable for the purposes for which it was designed. The court allowed the amendment to the complaint as of the beginning of the trial. The court directed the jury to return a verdict for defendant in each case upon the ground that there had been no proof of negligence and no evidence of a breach of warranty. The court stated also that it considered the doctrine of *res ipsa loquitur* inapplicable so as to make evidence of negligence unnecessary. Plaintiffs on oral argument said that they were not relying on that doctrine, and they did not refer to it in their brief.

The questions involved and the assignments of error as set forth in plaintiffs' brief are as follows:

(1) Was the evidence produced by plaintiffs sufficient for a jury issue on the question of negligence of defendant?

(2) Was the evidence produced by plaintiffs sufficient for a jury issue on the question of breach of warranty by defendant so as to constitute error in both instances on the part of the court in directing a verdict for defendant?

Plaintiffs cite as controlling Bartley v. Fritz, 205 Minn. 192, 285 N. W. 484, and other Minnesota cases.[2] In the Bartley case, this court said that a verdict may be directed in those unequivocal cases where it clearly appears to the court on trial that it would be its duty to set aside a contrary verdict as not

[2]Osborn v. Will, 183 Minn. 205, 236 N. W. 197; Applequist v. Oliver I. Min. Co. 209 Minn. 230, 296 N. W. 13; Kundiger v. Prudential Ins. Co. 219 Minn. 25, 17 N. W. (2d) 49; LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 21 N. W. (2d) 522.

justified by the evidence or as contrary to the law applicable to the case. Abbett v. C. M. & St. P. Ry. Co. 30 Minn. 482, 16 N. W. 266; Yates v. Gamble, 198 Minn. 7, 268 N. W. 670; 23 Minn. L. Rev. 363, 367. The court also said in that case that it is only in the clearest of cases where the facts are undisputed and it is plain that all reasonable men can draw but one conclusion that the question of negligence becomes one of law. See, also, Mechler v. McMahon, 180 Minn. 252, 230 N. W. 776, and cases there cited.

A motion for a directed verdict presents only a question of law. It admits for the purposes of the motion the credibility of the evidence for the adverse party and every inference which may be fairly drawn from such evidence. 6 Dunnell, Dig. & Supp. § 9764, and cases cited.

In the latest expression of this court contained in Hanson v. Homeland Ins. Co. 232 Minn. 403, 404, 45 N. W. (2d) 637, 638, in connection with an appeal from an order denying defendant's motion for a new trial in an action wherein a verdict was directed for plaintiffs, it was said:

"It is elementary that a motion for a directed verdict, which by its very nature accepts the view of the *entire* evidence most favorable to the adverse party and admits the credibility (except in extreme cases) of the evidence in his favor and all reasonable inferences to be drawn therefrom, should be granted only in those unequivocal cases where (1) *in the light of the evidence as a whole,* it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the *entire* evidence, or where (2) it would be contrary to the law applicable to the case. Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404."

An extreme case was there described as one where the testimony of a witness is absolutely impossible either physically or morally; or where the evidence presented by a party is so unreasonable and inconsistent and so opposed by undisputed and independent evidence as to be wholly incredible and unworthy of belief. See,

Brulla v. Cassady, 206 Minn. 398, 404, 410, 289 N. W. 404, 407, 410; Thompson v. Pioneer-Press Co. 37 Minn. 285, 33 N. W. 856, and dissent therein of Mr. Justice Mitchell at 37 Minn. 295, 33 N. W. 862; Kingsley v. Alden, 193 Minn. 503, 259 N. W. 7. It was pointed out in the Hanson case that the propriety of the court's action in directing a verdict is not to be tested by a scrutiny and a consideration of only that part of the evidence which is favorable to a contrary verdict. This court then said (232 Minn. 405, 45 N. W. [2d] 638):

"* * * if the evidence *as a whole* so overwhelmingly preponderates in favor of a party as to leave no doubt as to the factual truth, he is entitled to a directed verdict as a matter of law, even though there is some evidence *which, if standing alone,* would justify a verdict to the contrary. Not every conflict in evidence gives birth to a jury question. Brulla v. Cassady, *supra;* Kundiger v. Prudential Ins. Co. 219 Minn. 25, 17 N. W. (2d) 49; Applequist v. Oliver I. Min. Co. 209 Minn. 230, 296 N. W. 13; 6 Dunnell, Dig. & Supp. § 9764."

It is the contention of plaintiffs that the trial court erred in refusing to submit the case to the jury on the issues of defendant's negligence and breach of implied warranty. Plaintiffs argue that there was ample evidence from which reasonable men could have found for them and that the facts disclosed by the evidence were not such that reasonable minds would decide only in favor of defendant. They further argue that a reasonable conclusion which could have been reached by a fair-minded jury was that some part of the scaffold broke, collapsed, or failed structurally, causing the scaffold, which had been in use without incident for several days, suddenly to tip over. They couple this with the testimony of Fred S. Graser, defendant's president, on cross-examination that he examined the scaffold after the accident and found two broken angle braces and one broken cross brace; that the angle braces were weight-bearing portions of the scaffold; and that the cross brace was a stabilizing portion of the scaffold.

178

Plaintiffs insist that it was a question of fact for the jury to decide from all the evidence whether the pieces discovered after the accident broke before the scaffold tipped over and thereby caused its unbalancing. They contend that this testimony, linked with that of plaintiffs, that they felt something break or give way just before the scaffold fell, and the testimony which the structural engineer would have given in answer to the hypothetical questions, was such that reasonable persons could not have decided the case except in favor of plaintiffs.

This is primarily a negligence case. Plaintiffs therefore had the burden of proving that defendant was guilty of negligent conduct and that such negligence was the proximate cause of the accident. McGerty v. Nortz, 191 Minn. 443, 254 N. W. 601.

We have here a situation where the scaffold in use at the time of the accident had been delivered to plaintiffs' employers eight days before the accident occurred. During that eight-day period it was not in the possession of or under the control of defendant. The record does not show how the scaffold was used during the eight days, except for the three or four days immediately before the accident when it was being used by plaintiffs while the girders were being painted. Suffice to say that up to the time of the accident, when plaintiffs claim that the scaffold gave way or broke, there is nothing in the record to show that it was defective or unusable.

■ In connection with plaintiffs' first question, namely, whether the evidence produced by them was sufficient for a jury issue on the question of the negligence of defendant, it is our opinion that, considering the evidence as a whole, it was not sufficient. Their evidence was limited to showing what the scaffold was used for at the time of the accident and for a few days prior thereto; to plaintiffs' statements that the scaffold gave way and fell; and to a showing that an inspection of the scaffold by defendant's president after the accident disclosed that the angle braces were broken from the bottom on two end frames and that one-half of

a cross brace was broken at the pivot. There is nothing in the record to show that plaintiffs had examined the scaffold for defects at any time while they were using it. Rather, it appears that the scaffold had been assembled properly; that it was usable; that it had been used without incident right up to the time of the accident; and that no one considered it unsafe for the purposes for which it was used until it gave way and fell to the floor.

One of the inspections of the scaffold by defendant's president was made at the box factory four or five days after the accident, and the other was made at defendant's plant on the succeeding day. The scaffold was disassembled and was lying on the floor at the time he made these inspections. When asked what the result would be if these pieces which he had examined had broken while the men were on top of the scaffold, he replied: "It would be impossible to break while they were on the scaffold." He explained that the angle braces which were broken bore some weight "on extreme weights"; that the cross brace which was broken was not part of the weight-bearing portion, but was part of the equipment to keep the scaffold stabilized. He further said that the weight of two men such as plaintiffs, about 200 pounds each, together with the planks which formed the platform, a bucket or two of paint, and some tools was not too much weight for the scaffold, since it was designed to carry many more pounds than that. He testified that if the two men got on the same side of the scaffold to work that could not cause the scaffold to tip over, "because they are still on the inside of their bearing points." When questioned whether the scaffold would tip if both men got on one side, "sort of over in the corner of the scaffold," he claimed that it would not.

There is no testimony on the part of witnesses for plaintiffs as to what caused the breaks which were discovered after the scaffold fell—whether they occurred when the scaffold hit the cement; whether they resulted from damage, if any, inflicted on the scaffold by plaintiffs or other workmen present in the warehouse

during the eight-day period when the scaffold was out of defendant's possession and control; whether someone may have loosened certain parts of the connections during this eight-day period unknown to either plaintiffs or defendant; or whether the pieces broke because of some defect or weakness in the scaffold at the time it was delivered to plaintiffs' employers. Under these circumstances, where there was a complete lack of proof as to any one of the possible causes which might have resulted in the scaffold falling, the jury should not be allowed to speculate or guess just what caused the scaffold to fall, since it is well established that verdicts cannot rest upon conjecture or guesses alone. Klein v. Beeten, 169 Wis. 385, 172 N. W. 736, 5 A. L. R. 1237. It is our opinion, under the facts and circumstances here, that the evidence produced by plaintiffs was not sufficient for a jury issue on the question of the negligence of defendant, and in the light of the evidence as a whole the trial court did not err in directing a verdict for defendant on that ground. Mere proof of the happening of an accident or proof that death or injury resulted from the act of another is not enough to establish negligence or its causal relation to the injury. Hagsten v. Simberg, 232 Minn. 160, 44 N. W. (2d) 611.

Plaintiffs argue that the trial court erred in excluding some of their offered testimony in connection with the hypothetical questions submitted to Edward C. Gould, their expert structural engineer witness. They argue that if he had been given an opportunity to answer these hypothetical questions any reasonable man would have decided the case in their favor. A careful examination of the hypothetical questions involved satisfies us that there was no reversible error on the part of the court in connection with its action in that matter.

With reference to the first hypothetical question submitted, there was no indication whether the expert had any knowledge of the physical attributes of plaintiffs at the time of the accident. Neither was there anything in the hypothetical question

to indicate how much pressure the two men had been using or were capable of using to pull themselves along by grasping the overhead beams while on top of the scaffold. The question assumed facts which were not in evidence, in that there was no evidence that the scaffold was properly secured by wing nuts or that all the parts were in their proper places at the time of the accident. There was evidence that the scaffold was assembled properly eight days before the accident, but there was no testimony as to its assembled condition at the time of the accident. Neither was there evidence as to what had been done to the scaffold during the entire eight-day period that it was in the warehouse. The second and third hypothetical questions were subject to the same objections as to facts not in evidence. After examining these questions carefully, it is our opinion that even if they had been answered favorably by the expert for plaintiffs they would still have supplied no direct evidence of negligence on the part of defendant, because, at best, the answers would still have created a situation for the jury to speculate upon or guess whether defendant was negligent and that its negligence was the proximate cause of the accident.

It is our opinion also that the evidence produced by plaintiffs was not sufficient for a jury issue on the question of breach of warranty by defendant and that the court did not err in directing a verdict on that ground.

Szyca v. Northern Light Lodge, 199 Minn. 99, 271 N. W. 102, involved a situation where defendant owned and operated a building in which a hall on the third floor was often rented for public meetings. The leasing of the hall included also the use of tables and chairs. An aluminum company rented the hall for a public exhibition of its products. To accommodate the audience, chairs had been set up by agents of the aluminum company. Plaintiff, a woman aged 52, weighing 190 pounds, arrived at the meeting, selected a chair, and seated herself. The chair collapsed, and she fell to the floor, sustaining injuries for which she sought dam-

ages. At the close of plaintiff's case the court directed a verdict for defendant. Plaintiff assigned as error, among other things, that there was sufficient evidence of defendant's negligence to justify submitting the case to the jury, and that the court improperly sustained objections to plaintiff's questions designed to bring out the general condition of the chairs leased by defendant. This court there said that if, as plaintiff asserted, defendant owed to plaintiff ordinary care to see that the chairs were reasonably safe for the use for which they were intended, she failed to show any neglect of such duty. It appeared from uncontradicted testimony in that case that one Langagar had previously carefully inspected all the chairs for defects, and there was no proof that the chair which collapsed was defective. We concluded there that, whatever the duty of the defendant, obviously it would not be liable for an accident resulting from such a cause.

It is our opinion that there is nothing in the record here showing a breach of warranty by defendant and that plaintiffs failed to show any neglect of duty on the part of defendant in connection with the furnishing of the scaffold for the use for which it was intended.

Affirmed.