**AMERICAN MACHINE AND TOOL COMPANY, INC., Respondent,**

**v.**

**STRITE–ANDERSON MANUFACTURING COMPANY, Appellant.**

**No. C1–83–1205, C3–83–1206 and C4–81–691.**

Court of Appeals of Minnesota.

July 17, 1984.

Petition for Further Review Denied Sept. 12, 1984.

Roger A. Zahn, Bruce B. James, Thompson & Klaverkamp, P.A., Minneapolis, for appellant.

Norman R. Carpenter, Robert L. Schnell, Jr., Faegre & Benson, Minneapolis, for respondent.

Heard, considered and decided by LANSING, P.J., and FOLEY and LESLIE, JJ.

## OPINION

FOLEY, Judge.

American Machine and Tool Company sued Strite-Anderson Manufacturing Company to recover for dies and inserts purchased by Strite-Anderson. Strite-Anderson counterclaimed for damages for non-delivery or late delivery. The jury found for American Machine on its claim and against Strite-Anderson on the counterclaim.

Strite-Anderson moved for judgment not withstanding the verdict on the issue of American Machine's liability on the counterclaim and for a new trial on damages. Alternatively, Strite-Anderson sought a new trial on all issues. The trial court denied the motions. Strite-Anderson appealed to the Court of Appeals and petitioned for discretionary review by the Supreme Court. The Supreme Court accepted the case and remanded it to this court. We affirm.

### FACTS

Appellant Strite-Anderson is a die-cast manufacturer. Respondent American Machine is a now defunct machine shop which made tooling for die-casters. The two companies dealt with each other for almost 20 years. American Machine was Strite-Anderson's primary tool supplier.

In May 1976, American Machine announced its liquidation. Carl Berg, founder of American Machine, told Strite-Anderson that the company would complete orders in progress, but would not accept any new orders.

In October 1976, as part of its efforts to wind up business, American Machine sued Strite-Anderson for payment for dies and inserts. Strite-Anderson counterclaimed for damages for non-delivery and late delivery. The jury, by special verdict, found for American Machine on its claim and against Strite-Anderson on its counterclaim.

*Purchase Orders Covered by Claim and Counterclaim*

Six purchase orders involving six Little Mac dies, 16 Little Mac inserts and six Double Mac dies are at issue on appeal. Delivery information for these orders is summarized below.

| PO # | PO Date | Description | PO Delivery Date | Delivery or Tender Date |
|------|---------|-------------|------------------|------------------------|
| 17734 | 4/21/76 | 4 LM dies | 7/14/76 7/21/76 7/28/76 8/4/76 | 9/30/76 10/28/76 11/3/76 11/5/76 |
| 17735 | 4/21/76 | 16 LM inserts | none listed | 12/12/76 |
| 17448 | 4/23/76 | 1 LM die | 5/14/76 6/23/76 | 8/27/76 |
| 17449 | 4/23/76 | 1 LM die | 5/4/76 6/23/76 | 8/20/76 |
| 17463 | 4/20/76 | 3 DM dies | 7/14/76 7/28/76 8/15/76 | 10/8/76 10/8/76 11/29/76 |
| 17464 | 4/20/76 | 3 DM dies | 7/14/76 7/28/76 8/15/76 | 9/23/76 9/29/76 9/30/76 |

American Machine's claim involved only purchase orders 17734 and 17735. Strite-Anderson's counterclaim involved all of the orders.

There was conflicting evidence at trial as to when purchase orders 17734 and 17735 were placed. The purchase orders were dated April 21, 1976, but were not entered in Strite-Anderson's purchase order log until late May 1976. James Bloomquist, former Strite-Anderson director of engineering, testified that the orders were placed after the May 1976 liquidation announcement and were backdated to avoid the cut off on new orders. American Machine die cast foreman Gerald Whalen testified that he backdated acknowledgments for the orders. Strite-Anderson executive officer Malby Blanchard acknowledged that he had no written authorization from his customer to buy the dies covered by purchase order 17734 until May or June 1976.

Similar questions were raised about the accuracy of purchase orders 17748 and 17749. The orders contained conflicting delivery dates. Purchase order 17448 listed May 14, 1976, and purchase order 17449 listed May 4, 1976, as "arrival date required at our plant." Both provided "premium pay to assure delivery by June 23,

1976." A June 27, 1976 letter from Strite-Anderson sought confirmation of an August 1, 1976 delivery date. According to Blanchard, the discrepancies resulted because Strite-Anderson extended the time for delivery because of unexpected technical problems.

Bloomquist testified that Strite-Anderson put a hold on purchase orders 17748 and 17749 until June 3, 1976 when the customer paying for the dies gave approval to proceed. A note from Strite-Anderson to the customer confirmed that Strite-Anderson put a hold on the work. Blanchard testified that the hold did not involve work to be done by American Machine.

*Background Information*

The parties presented a great deal of other evidence to help the jury understand the context in which the disputed transactions took place.

The purchase order forms used by Strite-Anderson specify that time is of the essence, and Blanchard testified that timely delivery is essential to production. In addition, Whalen testified that he appreciated the importance of timely delivery of purchase order 17734 because he knew of Strite-Anderson's customer's production schedule.

By contrast, Berg and Bloomquist testified that delivery dates are estimates and that die shops cannot guarantee delivery. The American Machine quotation form provides that every effort will be made to deliver as promised, but no responsibility is assumed for delays. Berg testified that the form was designed by the National Tool and Die Association, and that diecasting shops, including American Machine, customarily use it. However, he was not sure if the form had been used for the disputed transactions. Blanchard testified that it was not used.

A summary of the 175 transactions between the companies from July 1974 through March 1976 showed that 45 of the orders had been delivered after the delivery date, 10 of them by more than a month. Strite-Anderson paid only one invoice within 30 days of receipt.

Kathryn Anderson, Strite-Anderson secretary/treasurer, testified that the parties never abided by the printed invoice payment terms. She said that the normal course of dealing was for Strite-Anderson to pay American Machine only after its customers paid it for dies produced by American Machine.

Finally, Bloomquist testified that Strite-Anderson contributed to delays by telling American Machine to give repair "hot jobs" priority over jobs in progress.

## ISSUES

1. Did the trial court err by failing to direct the jury that as a matter of law American Machine breached the contract delivery terms?

 a. Did the trial court err in admitting course of dealing, usage of trade evidence to supplement the written terms of purchase orders for the disputed transactions?

 b. Were American Machine's deliveries as a matter of law not made within a reasonable time?

2. Did the trial court err in its instructions to the jury on the issues of contract formation, delivery, damages, and relevancy of evidence of Strite-Anderson's unauthorized use of government machines?

## ANALYSIS

### I.

Strite-Anderson contends that the trial court erred by failing to direct the jury that as a matter of law American Machine breached the contract delivery terms. The company offers two routes to reach this conclusion. First, it contends that American Machine breached the contract because it failed to deliver the goods by the purchase order delivery deadlines. The company contends the trial court should have excluded all course of dealing, usage of trade evidence offered to show later delivery was acceptable. Second, Strite-Anderson argues that even if course of dealing and usage of trade modified the delivery dates American Machine failed, as a matter of law, to make the deliveries within a reasonable time.

### I(a)

Minn.Stat. § 336.2–202 (1982) provides: Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein *may not be contradicted* by evidence of any prior agreement or of a contemporaneous oral agreement but *may be explained or supplemented* (a) by course of dealing or usage of trade (section 336.-1–205) or by course of performance (336.-2–208)

(emphasis added)

The dispute between the parties on the admissibility of course of dealing, usage of trade evidences turns on the distinction between "explain or supplement" and "contradict." Strite-Anderson takes the position that because the delivery dates contained in the purchase orders and acknowledgments were clear and unambiguous, the trial court should not have admitted evidence offered to show that later delivery was acceptable. All such evidence was

"contradictory" and should have been excluded. American Machine argues that the court properly admitted the extrinsic evidence to "explain or supplement" the written terms.

■ The purchase orders covered by the counterclaim were not as clear and unambiguous as Strite-Anderson contends. One purchase order listed no delivery date and two others contained conflicting delivery dates. However, even assuming the delivery dates were apparently clear from the purchase orders, Strite-Anderson's interpretation of § 336.2–202 is unduly restrictive. A finding of ambiguity is not a prerequisite for admission of usage of trade or course of dealing evidence. Uniform Commercial Code Comment to § 2–202; *Columbia Nitrogen Corp. v. Royster Co.,* 451 F.2d 3, 9 (1st Cir.1971).

The trend has been for judges, looking beyond written contract terms to reach the "true understanding" of the parties, to extend themselves to reconcile trade usage and course of dealing with seemingly contradictory express terms. They have permitted course of dealing and usage of trade to add terms, cut down or subtract terms, or lend special meaning to contract language. See the excellent summaries of cases on the subject in *Nanakuli Paving & Rock Co. v. Shell Oil Co.,* 664 F.2d 772 (9th Cir.1981) and J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code,* § 3–3 (2d ed. 1980).

> The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous, but whether the proffered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.

*Board of Trade of San Francisco v. Swiss Credit Bank,* 597 F.2d 146, 149 (9th Cir. 1979) (quoting from *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.* 69 Cal.2d 33, 37, 69 Cal.Rptr. 561, 564, 442 P.2d 641, 644 (1968))

> The delineation by thoughtful commentators of the degree or consistency demanded between express terms and usage is that a usage should be allowed to modify the apparent agreement, as seen in the written terms, as long as it does not totally negate it.

*Nanakuli,* 664 F.2d at 780.

> Usage is always admissible, even though the express term controls in the event of inconsistency, which is a jury question.

*Id.* at 802.

■ The inquiry does not end with the abstract question of the admissibility of course of dealing, usage of trade evidence to explain a written term. We must also determine if the evidence admitted was relevant and if it qualified as course of dealing or usage of trade evidence under Minn. Stat. § 336.1–205(1) & (2) (1982).

> Questions of the parties' intentions concerning an asserted trade usage or course of dealing will not always require a jury determination. If the evidence fails to show a practice is regularly observed, the judge can exclude the evidence because it does not show a course of dealing or usage of trade as defined in the Code. If the members of the trade confirm an actual usage but do not support the assertion that the usage applies to the particular facts in litigation, the judge will exclude evidence of the usage as irrelevant.

Kirst, *Usage of Trade and Course of Dealing: Subversion of the UCC Theory,* 1977 Law Forum, 811, 839.

Upon appeal, Strite-Anderson objects to admission of four items:

1. a summary of Strite-Anderson's payment record from January 1974 through September 1976;

2. Strite-Anderson's quotation form;

3. testimony by Berg and Bloomquist that delivery dates are estimates or guesses rather than guarantees; and

4. a summary of purchase orders, deliveries, and payments from July 1974 through march 1976;

■ Strite-Anderson made a pretrial motion to exclude all evidence pertaining to its

bill paying history, and objected at trial to admission of the American Machine quotation form. Those issues are properly before this court. However, the company failed to object to admission of the summary of purchase orders and deliveries or to testimony that machine shops do not guarantee delivery. It cannot object to this evidence for the first time upon appeal. Only "errors in fundamental law and controlling principles" are reviewable in the absence of a trial objection. *Anderson v. Mid-Motors, Inc.*, 256 Minn. 157, 98 N.W.2d 188 (1959).

■ The trial court properly admitted evidence of Strite-Anderson's payment record. The company contends that its payment history does not serve to explain or supplement the purchase order delivery dates; the two were unrelated. Strite-Anderson is in error. The trial court could reasonably conclude that payment arrangements between the parties were relevant in determining whether they intended the purchase order delivery dates to be absolute deadlines or flexible estimates. Strite-Anderson's payment record, considered in conjunction with American Machine's delivery record, is evidence that the parties understood that payment and delivery dates were not *absolute* deadlines.

■ The trial court's admission of the American Machine quotation form was harmless error. The trial court should not have admitted the form because American Machine failed to establish its relevance. Berg did lay sufficient foundation to qualify use of the form as usage of trade. But since the form was not used in any of the disputed transactions it was irrelevant. The admission was harmless error because the evidence was cumulative and there was other competent evidence to justify the verdict. *In Re Estate of Lea*, 301 Minn. 253, 222 N.W.2d 92 (1974). The error, viewed in the context of a 17-day trial involving hundreds of exhibits, did not substantially prejudice Strite-Anderson.

### I(b)

Finally, Strite-Anderson contends that even if the purchase order delivery dates were not absolute deadlines, that American Machine's deliveries were, as a matter of law, not made within a reasonable time. Therefore, the company argues, the trial court should have directed a verdict or granted judgment NOV on the issue of American Machine's liability on Strite-Anderson's counterclaim.

■ Motions for directed verdicts and motions for judgments notwithstanding the verdict are governed by the same standard. *Hanrahan v. Safway Steel Scaffold Co. of Minnesota*, 233 Minn. 171, 46 N.W.2d 243 (1951). In both cases the court must view the evidence as a whole in the light most favorable to the non-moving party. *Lakehead Constructors, Inc. v. Roger Sheehy Co.*, 304 Minn. 175, 229 N.W.2d 514 (1975). Such motions should be granted "only in those unequivocal cases where, in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where it would be contrary to the law applicable to the case." *Dean v. Weisbrod*, 300 Minn. 37, 217 N.W.2d 739, 742 (1972) (quoting from *Hanrahan* ).

■ In this case the evidence was not so one sided as to preclude the conclusion that American Machine delivered within a reasonable time. The jury could have reasonably concluded that parties did not expect rigid adherence to either written payment or delivery terms. The following evidence supports the jury finding that the purchase order delivery dates were estimates rather than absolute deadlines.

1. testimony by Berg and Bloomquist that delivery dates are estimates and that die shops cannot guarantee delivery;

2. the frequency of late deliveries by American Machine;

3. testimony by Anderson that Strite-Anderson never considered the printed payment terms on American Machine's invoices binding; and

4. Strite-Anderson's payment record.

And the jury could have relied upon the following evidence to conclude that American Machine's deliveries (or tenders of delivery) were reasonable:

1. testimony by Bloomquist that Strite-Anderson contributed to delays by telling American Machine to give repair "hot jobs" priority over jobs in progress;

2. evidence that purchase orders 17734 and 17735 were backdated to avoid American Machine's deadline for new purchase orders;

3. discrepancies between due dates specified in purchase orders 17748 and 17749 and in correspondence from Strite-Anderson to American Machine; and

4. evidence that Strite-Anderson put a hold on work covered by purchase orders 17748 and 17749 until June 3, 1976, when it got permission from its customer to proceed.

## II.

Strite-Anderson contends that the trial court's instructions to the jury on the issues of contract formation, delivery, and damages were inadequate. The company also argues that the court erred by refusing to instruct the jury that Strite-Anderson's unauthorized use of the government machines was irrelevant to the dispute between Strite-Anderson and American Machine.

The charge of the trial court must be viewed in its entirety and from a practical and commonsense point of view. The trial court is allowed considerable latitude in the language used, and a new trial will not be granted where requested instructions are refused when the general charge fairly and correctly states the applicable law. All that is required is that the charge as a whole convey to the jury a clear and correct understanding of the law. It is unnecessary that every possible opportunity for misapprehension be guarded against. If the charge fairly lays down the law of the case, it is sufficient. Usually it is preferable to give a general charge, if practicable, upon the whole law of the case rather than to run the risk of overemphasizing one side of the case or confusing the jury as is often done by giving requested instruction or particularizing upon specific items.

*Cameron v. Evans*, 241 Minn. 200, 208, 62 N.W.2d 793, 798–99 (1954) (footnotes omitted) quoted approvingly in *Cobb v. Aetna Life Insurance Co.*, 274 N.W.2d 911, 916 (Minn.1979).

 Although the court's charge to the jury was less detailed than that suggested by Strite-Anderson, it accurately recounted the pertinent UCC sections. It was within the court's broad discretion.

 Strite-Anderson's complaint that it was prejudiced by the court's refusal to instruct the jury that its unauthorized use of the government machines was irrelevant to its dispute with American Machine does not merit discussion. Strite-Anderson made the issue relevant by basing its damage claims upon an assumption of unlimited, rent-free, commercial use of government machines reserved for government projects.

## DECISION

We affirm the trial court decision. The trial court properly instructed the jury and properly admitted course of dealing, usage of trade evidence to supplement or explain the delivery terms of the purchase orders. The court's admission of an irrelevant quotation form was not reversible error.