**Randall W. SMITH as Trustee for the heirs and next of kin of Leslie Randall Smith, Appellant,**

**v.**

**David RUNK, et al., Respondents.**

**No. C4-88-66.**

Court of Appeals of Minnesota.

June 21, 1988.

James R. Bell, Bell, Arcand, Florin & Tennant, St. Paul, for appellant.

Kay Nord Hunt, V. Owen Nelson, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondents.

Heard, considered and decided by SCHUMACHER, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Randall W. Smith, as trustee for the heirs and next of kin of Leslie Randall Smith, commenced this personal injury action against respondents David Runk and his father Terry Runk. By agreement of the parties, all claims against Terry Runk were dismissed at the beginning of trial. After appellant had rested, the court granted Runk's motion for a directed verdict. This appeal followed entry of judgment in Runk's favor. We affirm.

## FACTS

On August 4, 1983, 23 year old Leslie Smith was fatally injured in a bicycle accident. The accident occurred at approximately 9:30 p.m. when respondent David Runk (who was then 14 years old) was riding his bicycle home, traveling west on a bike path which ran alongside County Road 12 in the city of Stillwater, Minnesota. The path had an unmarked blacktop surface, and was seven to eight feet wide. Runk testified that he was riding about one to two feet from the right-hand edge of the path. He had just shifted into third gear and had begun to pedal up a gradual, quarter mile incline. Runk estimated he was traveling at a speed of seven to ten miles per hour.

Runk testified that he was looking forward, but that his visibility was limited:

> You could see 10 feet around you, I suppose. You could see the path and the grass, but not too far in front of you or around you. It was really dark.

He indicated that there was no traffic passing by on nearby County Road 12, and that there were no street lights in the immediate area or any other exterior illumination.

At the same time, Smith was traveling in the opposite direction on the bike path. Smith had just descended the hill when the accident occurred. Runk had no warning of Smith's approach, and described the collision as like "[a] tremendous explosion" or a "jolt" coming from "[t]he front of me." Runk found himself on the grass boulevard between the bike path and County Road 12.

Runk then noticed Smith lying in the center of the path a short distance downhill. Smith was conscious but incoherent, and was bleeding severely from his head. Runk flagged down a passing motorist for help.

The Stillwater police received the call at 9:41 p.m. and arrived at the scene shortly thereafter. Officer Leo A. Miller, one of the officers who responded to the call, testified that Smith was lying "almost in the center of the path." Miller had returned to the accident scene the next day, but was unable to determine the point of impact because there were no skid marks on the path.

As to the lighting conditions, Miller testified:

> The lighting was very poor. It was an extremely dark night; one of those nights where there is no moon, no stars; extremely dark. There were no street-lights in the area.

Miller testified that the two bicycles only had front and rear reflectors, and that in his opinion "reflectors in this case would have done no good because there was no exterior light to reflect any light unless perhaps by a passing car."

The only other person who testified as to what occurred after the accident was passing motorist Thomas Belair. Belair arrived at the scene at approximately the same

time as the police officers. Belair testified that he had parked his van 150 to 200 feet away, and that from the nearest street light he could read the markings on the side of his van.

There were no other witnesses to the accident. Smith died a few days later due to head injuries.

## ISSUE

Did the trial court err in granting a directed verdict at the close of appellant's evidence?

## ANALYSIS

 A motion for a directed verdict will be granted only in those unequivocal cases where the evidence compels one result. *Hanrahan v. Safway Steel Scaffold Co.*, 233 Minn. 171, 176, 46 N.W.2d 243, 247 (1951). If different minds might reasonably reach different conclusions from the evidence presented, then the question is one for the jury to decide. *Id.*

Where the evidence shows that a purported theory of causation is no more plausible than another theory, the plaintiff has failed to establish a prima facie case and a directed verdict is proper. *Zinnel v. Berghuis Construction Co.*, 274 N.W.2d 495, 499 (Minn.1979). Although a prima facie case may be established by circumstantial evidence, it cannot be founded upon speculation and conjecture about causation. *Elias v. City of St. Paul*, 350 N.W.2d 442, 444 (Minn.Ct.App.1984). To allow the jury to apportion fault in this case would require speculation on their part as to the cause of the accident.

Appellant contends that the directed verdict was improper because the evidence presented a jury question on theories of negligence and violation of statutes. In affirming the grant of a directed verdict, we rely largely on the well-reasoned memorandum accompanying the trial court's order.

1. *Common law negligence*

██ Appellant first asserts that the following evidence was presented to support

his theory that Runk failed to keep a proper lookout: Runk did not see Smith at all; Runk took no evasive action; and although Runk testified that he could only see 10 feet in front of him, Belair testified that he could read the lettering on his van which was parked on the side of the road some distance away. However, Runk's uncontroverted testimony was that he was looking forward at the time of the collision but that he never saw the other bicycle. Moreover, Belair's statements involve the lighting conditions on the road, not the conditions on the path.

Appellant next argues that grant of a directed verdict was improper because a number of different inferences may be made from the evidence. He asserts that perhaps Runk lost control of his bicycle when he shifted gears to ascend the hill. This inference is speculative at best, particularly given Runk's uncontradicted testimony that he was able to shift gears without taking his hands off the handlebars and that nothing had distracted him prior to the collision.

Appellant also suggests that from the evidence it may be inferred that Runk was on the wrong side of the bike path at the time of the accident. Again, this inference is speculative. Although there were no physical marks on the path to indicate the point of collision, the witnesses were in relative agreement as to the location of the bicycles and their riders following the accident. Appellant failed to offer any expert testimony to support his claim that based on those locations, the accident occurred on Smith's side of the path.

2. *Violation of statute*

██ Appellant further alleged that Runk had violated a number of Minnesota traffic statutes, which bicyclists are required to observe under certain circumstances. *See, e.g.*, Minn.Stat. § 169.222, subd. 1 (1982). We agree with the trial court that "there was absolutely no evidence adduced at trial which could lead reasonable people to conclude that David Runk violated any provision of Chapter 169." Runk's unrebutted testimony established that he was not oper-

ating his bicycle carelessly or recklessly, that he was not riding at an excessive speed, and that he was not traveling on the wrong side of the path. *See* Minn.Stat. §§ 169.13, subds. 1 and 2; 169.14; 169.18.

Appellant also argues on appeal that an issue exists as to whether Runk was negligent because his bicycle did not have a front lamp as required by Minn.Stat. § 169.222, subd. 6. Although there was some discussion on this matter at the close of trial, appellant essentially agreed that both bicycles had the proper reflective devices as required by Minn.Stat. § 169.222, subd. 6 and Minn.Stat. § 169.55, subd. 1.

The result in this case is substantially similar to that reached in *Sauer v. State Farm Mutual Automobile Insurance Co.,* 379 N.W.2d 213 (Minn.App.1985), *pet. for rev. denied* (Minn. Feb. 19, 1986). In *Sauer,* two motorcycles collided with each other head-on. There were no witnesses to the accident, and neither of the drivers could remember the collision because of retrograde amnesia. In affirming the trial court's grant of a directed verdict, this court stated:

> The appellant's case here is based upon speculation and conjecture. That appellant's negligence alone caused his injuries is equally as plausible as the appellant's charge that [the other driver] was at fault. In the circumstances here it is even plausible to speculate that appellant's injury was caused by his deliberate misconduct. Therefore, the appellant did not establish a prima facie case, and the trial court properly rendered a directed verdict against appellant.

*Id.* at 215.

Appellant finally claims that the trial court erred during voir dire when it refused to ask the jurors whether they had any interest in an insurance company. We note that appellant's question was proper under rule 31 of the Code of Rules for the District Courts. However, our affirmance of the trial court's grant of a directed verdict renders this issue irrelevant.

## DECISION

Affirmed.

FORSBERG, Judge (dissenting):

I respectfully dissent. The defendant testified that he proceeded to ride a bike on a bike path which had an unmarked blacktop surface and was seven to eight feet wide. He admitted that he could not see more than 10 feet around him. There were no street lights in the immediate area. His bicycle did not have a headlight. The mere act of riding a bike in the dark would seem to me to establish prima facie negligence on his part.